## Gallagher, Appellant, *v.* McAdams.

*Corporations—Voting of stock—Building and loan association—Injunction—Equity—Quo warranto—Act of June 14, 1836, P. L. 621.*

1. A court of equity will not restrain the holders of stock in a building and loan association who have regularly taken their stock in accordance with the by-laws from voting the same at a regular election for officers of the association, where there is no evidence of fraud or of any intention on the part of the takers of the stock to use it in any way contrary to the law, or the by-laws of the association; and this is the case although the stock may have been purchased for the purpose of using it at a regular election of officers.

2. In such a case evidence of the financial inability of one of the takers of the stock to purchase it, is immaterial.

3. Where a corporate election is held at the proper place and the appointed time, and the meeting is regular, quiet and orderly, the only way to contest the validity of the election is by writ of quo warranto, as provided by the Act of June 14, 1836, P. L. 621.

Argued Oct. 17, 1911. Appeal, No. 13, Oct. T., 1911, by defendants, from decree of C. P. No. 3, Phila. Co., Sept. Term, 1910, No. 2,379, dismissing bill in equity in case of Peter J. Gallagher et al. v. James McAdams et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction. Before McMICHAEL, P. J.

At the trial the trial judge held that the court had no jurisdiction and dismissed the bill.

On exceptions to adjudication FERGUSON, J., filed the following opinion:

We are of opinion the trial judge was amply justified in dismissing the bill under rule 68 of the equity rules.

It is a matter of common knowledge among persons familiar with the operation of building and loan associations that stock is issued periodically and each issue of stock is entitled a series. These series are designated by

number or by the date of issuance. It is also usual for stock to be issued upon the payment of $1.00 for each share so issued. The series are issued either yearly or half yearly, and each corporation regulates by resolution of the board of directors or by law the number of shares which may be issued in any one series, and the number of shares which may be issued to any one applicant, although some associations are quite informal with regard to these matters and permit shares to be subscribed for without limit in either respect. Some associations permit stock to be issued in a series at any time up to the date of the issuance of the next series by the payment of the monthly dues on the stock back to the date of the series, while other associations restrict the privilege to a certain number of months after the date of the series. The stock is not issued full paid, as is usually the case with other corporations for profit, but when the monthly payments on the stock, together with the accumulated profits, equal in value the amount fixed by the charter and by-laws as the full paid or par value of the stock, the stock is said to be matured and is paid off and the interest of the stockholder in the association terminates.

In the case at bar it is alleged that certain persons subscribed for stock in a certain series of the Prosperity Building & Loan Association several months after the series had commenced to run, but before the commencement of a new series. At the time the stock was subscribed for, the dues were paid back to the commencement of the series. It is further alleged that these subscriptions were made with the concealed intention to control an election of officers and directors; that by means of these subscriptions to the stock, the election of certain officers and directors was accomplished; and that it is possible for these persons, having accomplished the election, to withdraw the stock so subscribed for. The prayers of the bill ask the court to declare these issues of stock to be void and invalid to sustain votes at the election which was held or at any ensuing election, and that the said stock be canceled; and that the

persons so subscribing for the stock be enjoined from voting upon such shares, and for other relief.

There was nothing offered in evidence to show anything unusual or unlawful with reference to these issues of stock. No by-law or resolution of the board of directors was offered in evidence to justify the court in holding that the stock was issued in a manner contrary to the usual mode of issuing stock in that association; in fact, it is admitted that so far as forms are concerned, the stock was regularly issued. We do not know from the evidence that any limit was placed by the association touching the number of shares which might be issued in any one series. Neither was there anything to indicate that other persons, whether stockholders or not, were denied the privilege of subscribing. There was, therefore, nothing before the court upon which a finding could be based that the issues of stock complained of were unlawful or irregular, or that the officers exceeded their authority. It may be the purpose of this subscription was to secure control of an election of officers, but such purpose is not necessarily unlawful. The right to hold stock carries with it the right to vote, and a subscription to stock may be for the purpose of controlling an election, and this purpose is valid and legal, whether concealed or disclosed.

The cases which have been cited to us, in which directors of corporations have disposed of stock in the treasury without giving the privileges to other stockholders to subscribe, have no bearing upon the question involved in this case, because there is no evidence that other stockholders were denied the privilege to subscribe in this case, and also because it is not usual in building associations to restrict the subscribers for new stock to those who are already stockholders. If there was such a usage, building associations would frequently be unable to secure stockholders.

Upon the question of the right to vote at elections, it may be that prudence would require a building association to provide that stockholders should only have the privilege to vote when their stock was of a certain age, but, in the

absence of such a by-law, the court is without power to
deny to the holder of stock the right to vote for officers.
There is nothing in the suggestion that these stockholders
have the privilege of withdrawing their stock, because the
same privilege extends to all stockholders.  As a matter of
fact, building associations usually have a by-law limiting
the amount in the treasury available for withdrawing
stockholders.  Whether there was such a by-law in this
case we do not know, but the privilege which the new
stockholders had in the case at bar was no different from
that which was available to all stockholders.

The above observations bear upon the merits of the
case.  So far as the bill relates to the election which was
held in October, 1910, we are of opinion that the complain-
ants have an adequate remedy at law by a proceeding quo
warranto.  In view of the fact, however, that the bill prays
that the stock which is the subject-matter of the complaint
shall be enjoined from future exercise of the voting privi-
lege, we are obliged to say there is nothing in the evidence
which would justify the court in entering the decree
prayed for.

The exceptions are dismissed.

*Error assigned* was decree dismissing the bill.

*E. Spencer Miller*, for appellants.—An injunction was
proper: Electric Co. of America v. Electric Illuminating
Co., 200 Pa. 516; Morris v. Stevens, 178 Pa. 563; Masson's
App., 70 Pa. 26; Garland v. Rives, 15 Am. Dec. 756;
Wagner v. Fehr, 211 Pa. 435.

*E. Clinton Rhoads*, with him *Michael Francis Doyle*, for
appellees.—There is no evidence whatever in the case
which justifies the facts as assumed in the statement of
question involved.  An injunction will not be granted on
the ground that the stockholder against whom the injunc-
tion is sought is likely to obtain control of the affairs of the
corporation: Rice v. Rockefeller, 134 N. Y. 174 (31 N. E.

Repr. 907); Camden & Atlantic R. R. Co. v. Elkins, 37
N. J. Eq. 273; Rigg v. Ry. Co., 191 Pa. 298; Com. v. Dal-
zell, 152 Pa. 217; Bigelow v. Calumet, etc., Mining Co.,
167 Fed. Repr. 721; Rothchild v. R. R. Co., 113 Fed.
Repr. 476; State v. Smith, 48 Vt. 266.

Where a corporate election is held at the proper place
and the appointed time, and the meeting is regular, quiet
and orderly, the only way to test the validity of the elec-
tion is by a writ of quo warranto as provided by the Act of
June 16, 1836, P. L. 621: Jenkins v. Baxter, 160 Pa. 199;
Bedford Springs Co. v. McMeen, 161 Pa. 639; Brower v.
Kantner, 190 Pa. 182; Paynter v. Clegg, 9 Phila. 480;
Madden v. Electric Light Co., 7 Pa. Dist. Rep. 304;
O'Shea v. Flannery, 26 Pa. C. C. Rep. 89; Com. v. Dal-
zell, 152 Pa. 217.

OPINION BY BEAVER, J., March 1, 1912:

The appellant states the question herein involved as
follows: "Whether an injunction will be granted to en-
join against the voting of stock in a building association,
which was taken for the exclusive purpose of obtaining
control at an election by parties acting at the instance of
candidates for office, intending to withdraw afterward."

It is expressly admitted, in answer to a question sug-
gested by the court: "But as I understand it, there was
no objection or protest at the time the stock was issued
against the issuing of the stock." Mr. Miller: "I think
that is so. It was issued with all regular forms." In
answer to a question by defendant's attorney, in the cross-
examination of one of the plaintiff's witnesses who was
on the stand: "Q. If, as you state, Mr. Doyle said that
[at] this protest meeting, that the stock was to be held,
how did you come to swear to a bill which says that this
stock was taken for the purpose of being withdrawn after
the election? A. That is our inference. Mr. Doyle at
the meeting said otherwise." These admissions, therefore,
would seem to negative any substantial ground upon
which the question involved, as stated by the appel-

lants, is based. The testimony does not establish the fact, which was assumed in the question, that the stock referred to was taken for the exclusive purpose of obtaining control at an election by parties acting in the instance of candidates for office, or that it was taken with the intention of withdrawing it afterwards.

Under the testimony, therefore, as appeared before the court at the hearing, the question for decision was, Will the court, by a decree in equity, restrain the holders of stock in a building association, regularly taken in accordance with the by-laws of the corporation, from voting said stock at a regular election for officers of the association, there being no evidence of fraud or of any intention on the part of the takers of the stock to use it in any way contrary to law or the by-laws of the association?

The purchase of stock in a regular way, under the rules of the building association, was open to all subscribers, and even if it were clearly proved that the defendants purchased the stock for the purpose of using it at a regular election for officers, we cannot say that that was either illegal or irregular. All the parties had a perfect right, as we understand it, to do this. Whether the stock so used changed the result of the election from what it would have been, if it had not been so used, it is not, therefore, important to inquire.

In Com. v. Dalzell et al., 152 Pa. 217, it was held: "The right of voting stock at corporate elections is an incident of ownership, to be exercised, of course, in the mode and under the restrictions prescribed by the charter and by-laws; but nevertheless a part of the stockholder's property, inherent in him by virtue of his title. As said by the present chief justice in Tunis v. Hestonville, etc., R. R. Co., 30 W. N. C. 96, 'The right of voting stock is inseparable from the right of ownership. The one follows as a sequence from the other, and the right to vote cannot be separated from the ownership without the consent of the legal owner.'"

The stock in question, therefore, having been regularly

issued, in accordance with the rules of the association, and the 200 shares, the voting of which by the bill is specially sought to be enjoined, having been subscribed by authority of those to whom it was issued, we can see no reason why the owners thereof did not have a perfect legal right to vote the number of shares held by them, at the election on October 21, 1910. The order of the court, refusing the preliminary injunction, therefore, on affidavit and argument, and refusing the permanent injunction, after testimony and hearing, was, we think, entirely proper. The first and thirteenth assignments of error are, therefore, overruled.

Upon the hearing, several questions relating to the admissibility of testimony are raised in the second, third, fourth, fifth and sixth assignments of error. The plaintiffs offered to prove by Peter J. Gallagher, one of the plaintiffs then on the stand, in answer to a written statement of the plaintiffs' case, made at the request of the court, which was afterwards sworn to and is on file, that Mr. Rhoads, counsel for the defendants, arose, and, addressing the court, in the presence and hearing of Mr. Doyle and the other defendants in this case, said: "We admit that this stock was taken with a view to the election." We think the offer was properly rejected. It was immaterial and, if to be relied upon, should have been taken down at the time and not made the subject of verbal testimony, based upon the recollection of an interested witness, likely to give rise to an immaterial and irrelevant issue.

So as to the offer to ascertain by the cross-examination of Charles Resch, as shown in the third, fourth, fifth and sixth assignments of error, that he was a working man, dependent upon his wages, and the salary received from the Prosperity Building & Loan Association, as its secretary, to support himself and family; that he had a family, consisting of wife and children, and other questions concerning his ability to pay the dues upon the stock in the association for which he had subscribed and upon which he was regularly paying the regular dues of the association.

This was entirely irrelevant to the issue, as we regard it. Whether he borrowed or begged the money with which he paid his dues was in no sense a question which the plaintiffs had a right to raise at that stage of the hearing. That was a question solely for the association and, if the witness declined or refused to pay his dues, the remedy was with the association under its by-laws. We are unable to see how the status of the witness as a stockholder could be affected by any of the facts sought to be shown in the inquiries, as contained in the specifications of error above mentioned.

In view of the final disposition of the case, and the ground upon which it was ruled, we are of opinion that the refusal of the court to allow the plaintiffs to examine the minute book of the association, which was produced by the secretary, was proper, the view of the court being, "My view is that this is not the right proceeding for remedy, and therefore it is immaterial what they (the minutes) show in this proceeding."

The eighth and ninth assignments of error relate to the decree of the court, and its refusal to change it upon motion, the decree being as follows: "And now, to wit, December 16, 1910, this cause came on to be heard at this term and was argued by counsel, and upon consideration thereof, and it appearing upon the hearing of the said case that the complainants have not sustained the case made in the bill, and that the subject-matter of the said bill is not properly the foundation of an action in equity, it is ordered, adjudged and decreed, pursuant to rule 68 of the equity rules, that the complainants' bill be dismissed with costs."

It is not necessary, therefore, to refer at length to the tenth and eleventh assignments of error, which deal with the refusal of the court to strike out passages of the defendants' answer, as therein set forth, inasmuch as the refusal to do so in no way injured the appellants or could have influenced the action of the court, even if the changes asked for had been made.

It follows also that the fourteenth assignment of error, which is scarcely in accordance with our rule, in that it does not set forth the decree in totidem verbis of which it complains, is also overruled, which practically alleges that the court erred in not decreeing "that Charles Knorr, John M. Lutz and Michael Francis Doyle had not been validly elected for the offices of president, treasurer and solicitor respectively of said association, but that Peter J. Gallagher, James McIntyre and Thomas H. McCaffrey, plaintiffs, were duly and validly elected to fill said respective offices of said Association."

It was held, in the opinion of Judge FERGUSON, which covers the entire ground upon which the bill was dismissed quite fully and satisfactorily, that "So far as the bill relates to the election which was held in October, 1910, we are of opinion that the complainants have an adequate remedy at law by a proceeding quo warranto. In view of the fact, however, that the bill prays that the stock, which is the subject-matter of the complaint, shall be enjoined from future exercise of the voting privilege, we are obliged to say there is nothing in the evidence which would justify the court in entering the decree prayed for. The exceptions are dismissed."

In Updegraff et al. v. Crans, 47 Pa. 103, Mr. Justice THOMPSON, delivering the opinion of the court: "A bill in equity for an injunction to restrain borough officers from entering upon official duties, under an alleged illegal appointment of town council, will not lie, though they had not exercised or attempted to exercise the duties of their offices; the remedy is at law, by quo warranto, and to be invoked after entry into, or exercise of authority under, their appointment."

So in Jenkins et al. v. Baxter et al., 160 Pa. 199, the present chief justice delivering the opinion: "The power of supervision and control of corporations, conferred by the Act of June 14, 1836, P. L. 621, upon courts of equity will be used to supervise and control corporate elections, where it is shown in advance that, by reason of fraud, vio-

lence or other unlawful means, a fair and honest election cannot be held, but it will not be exercised to set aside an election regularly held.

"Where a corporate election is held at the proper place and the appointed time, and the meeting is regular, quiet and orderly, the only way to contest the validity of the election is by writ of quo warranto, as provided by the Act of June 14, 1836, P. L. 621."

So in Bedford Springs Co. v. McMeen, 161 Pa. 639: "A bill in equity to compel the surrender of the property of a corporation cannot be sustained where it appears that the real question in controversy is the validity of the election of the defendants as officers of the corporation. In such a case, quo warranto is the appropriate remedy."

See also Goldsworthy et al. v. Boyle et al., 175 Pa. 246; Brower v. Kantner, 190 Pa. 182. Even more directly in point is the case to which we are referred by the appellee, of Paynter et al. v. Clegg et al., which was a case decided by Judge PAXSON when on the common pleas bench, 9 Philadelphia, 480, in which it was decided: "An injunction will not be continued against a corporation merely because a dispute has arisen as to the election of directors who have not yet taken their seat," in which it was also held, that "If hereafter any person shall be found usurping the functions of an officer of this corporation, the writ of quo warranto is a convenient and fitting remedy. . . . It has the advantage of not bringing the entire business of the corporation to a standstill, pending an unimportant election contest."

The present practical question raised by this appeal is, whether or not the officers elected in October, 1910, and possibly re-elected since, although that does not appear in the case, are the bona fide officers of the Prosperity Building & Loan Association.

The proper remedy, as pointed out in the several cases to which we have referred to determine this question, is by a writ of quo warranto, which is not only a proper and con-

venient remedy but is, under the circumstances of this case as we view it, the only one.

The decree of the court below is, therefore, affirmed, and the appeal dismissed at the costs of the appellants.