# Dunlap, Appellant, *v.* Harbinson.

*Beneficial associations—Expulsion of members—Restoration of property—Equity.*

Where the constitution and by-laws of a beneficial association provide that charges against a member shall be referred to a committee for report and investigation, and that this committee shall be composed of persons who are members of the body or branch of the order wherein the charges originated, and charges against a member are referred to a committee, one of the members of which is not a member of the branch wherein the charges originated, the constitution of the committee is illegal, and any action that it may take is illegal and void.

Where the by-laws of a state lodge of a beneficial association provide for the appointment of deputy grand masters, who shall succeed to the office of the grand master when such office becomes vacant, and be vested with the powers and authorities of that office, the action of the supreme grand master of the general association in appointing a person as grand master of the state lodge who is not a deputy grand master, is wholly invalid, and any acts of such appointee in connection with expulsion of members are wholly void and illegal.

Argued Oct. 30, 1916. Appeal, No. 3, Oct. T., 1916, by plaintiff, from decree of C. P. No. 5, Philadelphia Co., June T., 1914, No. 673, dismissing bill in equity in case of William A. Dunlap, Supreme Grand Master of the Supreme Grand Lodge of the Loyal Orange Institution of the United States of America; The State Grand Lodge of Pennsylvania of the Loyal Orange Institution of the United States of America et al. v. Charles Harbinson et al. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Bill in equity for an injunction to restore officers of a beneficial association to their prerogative. Before RALSTON, J.

The facts are stated in the opinion of the Superior Court.

564, (1917).] Assignment of Error—Opinion of the Court.

*Error assigned* was decree dismissing the bill.

*Alexander M. DeHaven*, with him *Matthew Randall*, for appellants.

*Walter L. Sheppard* and *W. W. Porter*, of *Porter, Foulkrod & McCullagh*, for appellees.

OPINION BY KEPHART, J., May 7, 1917:

Through the action of the Supreme Grand Master of the Loyal Orange Institution of the United States there came into being two separate bodies of the State Grand Lodge of Pennsylvania. These two bodies, under their respective officers, have been exercising the powers, performing the duties and engaging in the specific purposes of the State Grand Lodge; each claiming authority as the rightful body by and through the supreme laws of the order, and each refusing to the membership of the other participation in its affairs. The complainants contend that the State Grand Lodge is in effect an unincorporated body governed by its laws, while the defendants present a charter of incorporation from the court of Allegheny County, dated some years ago, under which they submit a claim to organize, uncontrolled by the laws of the supreme lodge. This charter was procured while the relations between the supreme and State lodges were harmonious, and though incorporated, the charter, constitution and by-laws of the Supreme Grand Lodge have been recognized by the State Grand Lodge and the acts of the State lodge have been in accordance therewith. The bill prays for a restoration to the complainants of their powers and prerogatives as officers and members, and the restoration of the property held by the defendants. It asks that the court declare the acts of the appellees in exercising the powers and effecting the purposes of the State Grand Lodge of the Loyal Orange Institution, and in retaining the property, as null and void, and asks that the respondents be restrained from all such unlaw-

ful acts. The question of jurisdiction was not raised in limine, nor considered by the court below in its final determination, or argued by counsel either orally or by their paper books. The scope of the inquiry as presented by the record is such that we are inclined to hold that the court of equity had jurisdiction to hear the complaint. We will not consider the merits, of the various charges preferred by Dunlap and Donaldson against Filson and others, respondents, nor any supposed irregularities in their trials, which were properly within the control of the order. Our sole inquiry will be limited to the legality of the acts of the Supreme Grand Master, Dunlap, and his appointees, by which these officers, Filson and others, were removed. Were they so manifestly in violation of the constitution or laws of the order as to be a mere nullity?

This trouble among the parties had its inception in these acts, and while we may not be able, in our determination of the case, to bring to a satisfactory adjustment all the basic difficulties between the two bodies, we can at least point out what we consider in law as being the errors of the supreme authority, which may lead to a readjustment, to some degree, of certain of the difficulties presented. We are not convinced that through the constitution, by-laws, and conduct of the State Grand Lodge members in recognizing, acting on and thus incorporating the laws of the Supreme Grand Lodge in its own government, it did not subordinate itself to those laws. To this extent members of the Supreme Grand Lodge may have been in the position of members of the State lodge, or by its own laws make certain of its acts amenable to the Supreme Grand Lodge as a paramount authority within the State lodge. The exercise of the prerogatives of the Supreme Grand Lodge within the State lodge would not have the effect of destroying any corporate existence of the chartered organization in Pennsylvania. We need not rest our determination of the case on this question. The Supreme Grand

Lodge's constitution provides: "The Supreme Grand Master .......shall have the right to inquire into the conditions of all Lodges under its jurisdiction, or the affairs of any officer thereof, and if it shall appear that any officer is incompetent, neglects or refuses to perform the duties required by the constitution and laws, or misappropriate any funds belonging to the Order, or is guilty of any crime against the laws of the state in which such officer may reside, he may forthwith suspend said officer and appoint another brother, eligible to fill such office, in his stead, until an investigation of the facts may be had by the proper committee or a special committee appointed for that purpose." Under this authority the Supreme Grand Master suspended the State Grand Master. No specification of charges was made in the letter of suspension, but it is evident that Filson was not deceived or misled by this notice, as the testimony shows that he knew Dunlap had accused him of acts which, it was alleged, amounted to incompetency, neglect and refusal to perform the duties required by the constitution and laws. In this view it was not necessary to set out in detail the precise charges relied on in the order of suspension. Shortly thereafter formal charges were made. They then became a matter for determination under the laws of the order. The constitution provides a forum by which the accused may be tried and the charges determined. A committee was to be appointed to investigate the facts. This committee was to act in a judicial capacity. By it the suspended officer's right to membership and property was to be determined. The committee was to be composed of persons who were members of the body or branch of the order wherein the charges originated,—persons who were of equal grade or rank in the order with that of the person accused. Original jurisdiction to hear and determine was conferred on this body. Of the committee of five who were appointed, three consented to serve, but one of the three consenting persons was not a member of the State or

Supreme Grand Lodge. This was clearly an invasion of a fundamental right given to Filson by the laws to which the Supreme Grand Master, as well as all others, had subscribed. The action by the two remaining members was illegal in that it was the action of the minority of that committee. The report and adjudication made by them was not such an investigation and determination of the charges by a committee appointed by the Supreme Grand Master as required by the constitution and laws of the order. Filson might have disregarded this finding and have been within his rights, but he would still remain suspended. The most serious act of the Supreme Grand Master was in the appointment of Donaldson as the acting Grand Master of the State Lodge. The by-laws of the State Grand Lodge provide for the appointment of Deputy Grand Masters as a part of its official staff. There is nothing in the Supreme Grand Lodge's constitution or by-laws which is in conflict with this provision. The duties of the Deputy Grand Master are: "In case of resignation, or otherwise the office of Grand Master becoming vacant, he shall succeed to the office of Grand Master and be vested with the powers and authorities of that office." And when the Supreme Grand Master, under Art. XI, Sec. 1, of the constitution, suspended the Grand Master, he was required to appoint "another brother, eligible to fill such office, in his stead until an investigation......may be had." Donaldson was not a deputy, and he was therefore not eligible to the appointment of State Grand Master. His appointment was illegal and all acts done by him were without authority. The Deputy Grand Master was the lawfully constituted authority in Pennsylvania when Filson was suspended. Therefore, the subsequent organization of the State Grand Lodge of Pennsylvania, as conducted by the complainants and their associates, had no lawful existence under the laws of the order. The secretary and other officers elected, appointed or filling a vacancy through the laws of the order from 1911 to 1913, con-

tinued to act as officers of the State Grand Lodge in Pennsylvania. As the complainants must recover on the strength of their own right, and inasmuch as they have failed to show any legal right to exercise the sole powers and prerogatives, and to have restored to them privileges they are not legally entitled to, their bill must fall. The appellees continued in office by reason of their being the lawfully constituted members who were in office at the time the illegal action was taken. We are not successfully met with the proposition that the respondents must first exhaust the remedies provided in the laws of the order before they can appeal to the courts. If Filson was denied a hearing contrary to the fundamental law of the organization, and an officer was appointed to fill his position who had no authority to act, such hearing, appointment and the appointment of other officers under him was illegal. As said by Judge HENDERSON, in Gill v. Ladies Catholic Ben. Assn., 36 Pa. Superior Ct. 458-461: "The constitutional provision for appeal to the supreme council has reference to decisions rendered in accordance with the laws of the society. In the present instance there has not been a trial and, therefore, no decision was rendered; as a consequence, there was nothing from which to appeal."

We do not deem it necessary to pass on the legality of all the proceedings of the biennial convention held by the appellees in 1913. Nor do we wish to be understood as holding that all that transpired at that convention was lawful. This opinion does not conflict with Robinson v. Harshaw, 63 Pa. Superior Ct. 482. The questions as here presented were not raised in that case. After careful consideration, the assignments of error are overruled and the decree of the court below is affirmed.

CONCURRING OPINION BY WILLIAMS, J.:

The bill filed avers that plaintiffs were the officers of the Loyal Orange Institution of the U. S. A., and prays, inter alia, for an injunction "requiring the several de-

fendants to take the necessary action to completely restore to the Supreme Grand Lodge and the State Grand Lodge, or their properly constituted officers, their several prerogatives and rights as officers thereof." The answer denies that the plaintiffs were, and avers that the defendants are the officers of the society. The court below dismissed the bill because, inter alia, the "plaintiffs therefore have failed to demonstrate that the election held on August 11, 1913, pursuant to the notices sent out by Donaldson, acting as State grand master, was a valid one and that the officers elected at that time and place are the duly elected officers of the State Grand Lodge and entitled to the records, books, etc., of the order."

The issue thus raised and disposed of was the title to office, and, as quo warranto is the exclusive remedy to try title to office in a corporation: Gallagher v. McAdams, 49 Pa. Superior Ct. 81, the court below had no jurisdiction in a proceeding in equity to pass upon the question. The fact that as a collateral matter the bill prayed for the restoration of a property does not change the issue: Bedford Springs Co. v. McMeen, 161 Pa. 639.

Where the court has general jurisdiction of the subject-matter the parties may, by express agreement, waive the form of action and agree to treat the decree as if made in an action of quo warranto: Hayes v. Sturges, 215 Pa. 605. No such action was taken; on the contrary the defendants expressly objected to the jurisdiction of the court below and contended there that quo warranto was the proper proceeding. The bill should have been dismissed in the court below for want of jurisdiction.

For this reason I would dismiss the appeal.