## Gilmore et al., Appellants, *v.* Supreme Lodge of Loyal Orange Institution et al.

*Beneficial associations—Equity — Injunction — Names — Loyal Orange Institution—Similarity of names—Identifying principles.*

1. Members of a beneficial association, by seceding, lose the right to use the name of the parent order or any similar name, but may choose a new one which will identify their principles, keeping clear from an identity with the old one.

2. Where an unincorporated beneficial association called "Loyal Orange Institution of the United States of America," splits into two factions, and one of them, recognized by the courts as the true association, continues under the parent name, the other faction has no right to use the same name, but it may use in its corporate name or otherwise the word "Orange" or "Orangemen," to identify its principles.

Argued December 8, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 314, Jan. T., 1927, by plaintiffs, from decree of C. P. No. 4, Phila. Co., March T., 1926, No. 4100, for plaintiff, in case of Robert A. Gilmore et al., officers and members, etc., of the Supreme Grand Lodge of the Loyal Orange Institution of the U. S. A., an unincorporated association, and Loyal Orange Institution of the State of Pennsylvania v. Supreme Grand Lodge of the Loyal Orange Institution of the U. S. A., a corporation of the District of Columbia, and Hugh Wilson et al. officers and members, etc., of the Supreme Grand Lodge of the Loyal Orange Institution of the U. S. A., an unincorporated association, et al.  Affirmed.

Bill for injunction. Before McCULLEN, J.

The opinion of the Supreme Court states the facts.

Decree for plaintiffs. Plaintiffs objected to form of decree and appealed.

*Error assigned,* inter alia, was decree, quoting record.

*Walter Lee Sheppard,* with him *Porter, Foulkrod & McCullagh,* for appellants.—The exclusive right of appellants to use the words "Orange" and "Orangemen" in their titles as descriptive of their order and its membership, either alone or in conjunction with other words, is res judicata as respects appellees and those affiliated with them: Com. v. Kelly, 287 Pa. 139; Supreme Grand Lodge v. Grand Lodge, 215 N. W. (Mich.) 24.

Every principle of equity and fair dealing entitles appellants to protection in the use of the word "Orange" by these appellees, and their privies, in the title of their order or the designation of their membership: Dunlap v. Harbinson, 66 Pa. Superior Ct. 564; State Grand Lodge v. Morrison, 277 Pa. 41.

The contention that the word "Orange" is a generic word, like the word "Presbyterian," and is not open to appropriation exclusive of a subsequent user, even if sound, as an abstract proposition, does not justify the continued use of the word "Orange" by this appellee order: Am. Clay Mfg. Co. v. Mfg. Co., 198 Pa. 189; Potter v. Osgood, 79 Pa. Superior Ct. 397; Portuondo C. Mfg. Co. v. Mfg. Co., 222 Pa. 116; Warner & Co. v. Lilly, 265 U. S. 526.

The word "Orange," by long established and exclusive use, has become the identifying word in the name of appellant order, and a like use by another will be enjoined: Charter of Iron City Lodge, 39 Pa. Superior Ct. 365.

*Lemuel B. Schofield* of *Levinthal, Schofield & Kraus,* for appellees.—This appeal cannot properly determine the exclusive right to the words "Orange" and "Orangemen."

The Baltimore decree is not res judicata as to the question involved in this appeal. Com. ex rel. v. Kelly, 287 Pa. 139,

The use of the word "Orange" should not be enjoined: Warner & Co. v. Lilly & Co., 265 U. S. 526.

It is submitted, in conclusion, that the relief to be accorded a complainant in such a dispute is in the wise discretion of the chancellor who hears the case: Peoples Trust Co. v. S. D. & T. Co., 259 Pa. 62; St. Joseph's Beneficial Society, 35 Pa. Superior Ct. 80.

OPINION BY MR. JUSTICE WALLING, January 3, 1928:

Over seventy-five years ago there was instituted an unincorporated association called "Loyal Orange Institution of the United States of America," which has since been continuously maintained. It was a Protestant society whose avowed object was, inter alia, to foster and maintain the principles established in Great Britain by William of Orange. The association extended into several states where subordinate and state grand lodges were established. There was also a Supreme Grand Lodge, at the meeting of which in 1914 a split unfortunately occurred which divided the association into two factions, one known as the Kirkland and the other the "Lemmon" faction. Each claimed to be the true association and continued to employ its name. This caused intolerable confusion and resulted in much litigation. Some phase of the controversy has reached this court on at least five occasions. See Loyal Orange Institution v. Morrison, 274 Pa. 302; Loyal Orange Institution v. Morrison, 269 Pa. 564; State Grand Lodge of Pa. v. Morrison, 277 Pa. 41; Commonwealth ex rel. v. Kelley et al., 287 Pa. 139; and see Dunlap v. Harbinson, 66 Pa. Superior Ct. 564. It has also been before the Supreme Court of New York, (Bailey et al. v. Montgomery et al., 177 N. Y. App. Div. 777), and of Michigan (Supreme Grand Lodge, etc., v. Grand Lodge L. O. Inst., 215 N. W. 24). In each instance the Kirkland faction has been adjudged the true and original Loyal Orange Institution of the United States of America and entitled, inter alia, to the sole use of its name, which

the Lemmon faction has repeatedly been restrained from using. In 1890 the association took out a state charter in Pennsylvania under the original name and the Lemmon faction recently secured a national charter under the same name in the District of Columbia. The plaintiffs in this case being of the Kirkland faction, duly adjudicated the rightful Loyal Orange Institution, to further secure their rights as such, did, on March 12, 1926, file their bill in the trial court against the defendants, who represent the Lemmon faction; wherein, after setting out the facts and prior adjudications, they prayed for an injunction to restrain the defendants, inter alia, "from using or employing the name 'Loyal Orange Institution' or any part thereof, either alone or in combination with other names or terms, or the name 'Loyal Orange Lodge,' either alone or in combination with other names or terms, for the purpose of designating their association, or any lodge or other subordinate division or subdivision or agency thereof, or from using or employing the name 'Orangeman' for the purpose of designating any member thereof."

The case was heard upon bill, answer, replication and testimony, from which the chancellor found the facts as averred in the bill and recommended a decree in favor of plaintiffs. In due course the court in banc sustained the findings and recommendations of the chancellor and entered a final decree that the defendants and each of them "be restrained perpetually from using the names and titles Supreme Grand Lodge of the Loyal Orange Institution of the United States of America, and from using or employing the badges, emblems, rituals or seals of said Supreme Lodge of the Loyal Orange Institution of the United States of America, or Loyal Orange Institution of the United States of America, and from making use of any part of said names or titles, or any name, title or design naturally tending to mislead and to induce the belief that the defendant organizations and those in association with them as

lodges, officers or members are in any way a part of
the plaintiff Supreme Grand Lodge of the Loyal Orange
Institution of the United States of America, or the
Loyal Orange Institution of the United States of Amer-
ica, or are in any way connected or affiliated therewith;
and it is ordered that the costs of this proceeding be
paid by the defendants." Plaintiffs, contending that
the decree was inadequate to afford them the necessary
relief, brought this appeal.

Their main contention is the failure of the trial court
to expressly restrain defendants from the use of the
word "Orange" in connection with the name or title of
the seceding or Lemmon faction. This contention is
untenable. The decree does forbid the use of plaintiffs'
name or any part thereof naturally tending to mislead.
The words "Orange" and "Orangemen" had acquired
a definite signification long before the plaintiff associa-
tion was organized. By breaking from the original lodge
the seceders lost the right to use its name or any other
name so similar as to breed confusion; but did not
forfeit their right to be known as "Orangemen" or to
use the word "Orange," when so done as not to interfere
with, or prejudice the rights of the plaintiffs. Members
of a fraternal order like the one in hand, by seceding,
lose the right to use the name of the parent order or
any similar name, but may choose a new one which
will identify their principles, keeping clear from an
identity with the old. For example, it was held that
seceding members of the Knights of Pythias might re-
organize under the name Improved Order Knights of
Pythias: Supreme Lodge v. Improved Order K. or P.
(Mich.), 38 L. R. A. 658. This is well illustrated among
churches, where Presbyterians have reorganized as Unit-
ed Presbyterians, Methodists, as Free Methodists, or
Wesleyan Methodists, Baptists, as Freewill Baptists,
etc. Wherever the new name is so distinct from the
old as to avoid confusion, no law is violated. Each of
the contending factions here has approximately five

thousand members, and doubtless there are others in the United States who are not affiliated with either faction; so we are not satisfied that plaintiffs are entitled to the exclusive use of the words "Orange" or "Orangeman," but the right to the exclusive use of the name borne during the seventy-five years must be respected.

An action in equity determined by the Circuit Court, at Baltimore, Maryland, in 1924, definitely adjudged plaintiffs the rightful Loyal Orange Institution and defendants as seceders therefrom. This has properly been held res judicata of the rights of the respective parties: Commonwealth ex rel. v. Kelly et al., supra; Supreme Grand Lodge et al. v. State Grand Lodge et al., supra. It is urged for appellant that the decree entered in the Maryland case is res judicata of the right of plaintiff to the exclusive use of the word "Orangeman" as descriptive of their order. A sufficient answer thereto is that appellants, in the instant case, made no prayer for a similar decree. What they did ask was an injunction restraining defendants from using the name "Orangeman" for the purpose of designating any member of their order,—an entirely different matter. The Maryland decree enjoins the defendants "from using within the State of Maryland the name of the Supreme Grand Lodge of the Loyal Orange Institution in the United States of America, the complainant, in whole or in part, or any other name similar thereto or suggestive thereof." The manifest intent of this decree, considered as a whole, is to prevent defendants using the name or such part thereof as to constitute a name similar to or suggestive of that of plaintiffs, and that the term "in part" does not refer to a separate word. If it does, then defendants can not employ in their title the word "Loyal," the word "Orange," the word "Independent," the word "America," or the words "United States," although the name as a whole bears no resemblance to plaintiffs'. In the instant case, the decree as above

quoted restrains defendants from using any part of the plaintiffs' name in a manner naturally tending to mislead. This we believe accords with the proper intendment of the Maryland decree and, hence, it is unnecessary to consider the conclusiveness of this feature thereof.

The chancellor and court in banc gave the case painstaking consideration and we are not convinced of error.

The decree is affirmed and appeal dismissed at the cost of appellants.