## Rockwood Water Company v. Wolf et al.

116

*Joseph Levy*, for plaintiff.

*Kooser & Courtney*, for defendants.

BOOSE, P. J., May 31, 1938.—This case originated with the petition of the Rockwood Water Company, a corporation, for an alternative writ of mandamus against Irvin Wolf and H. F. Berkebile, requiring them to deliver up all the books, papers, records, money and other property of petitioner now in their possession or control. The petition, in the name of the company, signed and sworn to by Levi Wolf, president, J. P. Baine, treasurer, and M. T. Stewart, secretary, without the corporate seal thereto affixed, alleges its corporate existence; that prior to Feb-

ruary 21, 1938, the company, by Irvin Wolf, president, and H. F. Berkebile, secretary, gave notice to its stockholders that the annual meeting of the stockholders would be held at the offices of the corporation, in the Borough of Rockwood, on February 21, 1938, at 2 p. m., for the purpose of electing directors for the ensuing year, and that the polls would be open for voting from 2 p. m. until 3 p. m. on said date; that on said date there were issued and outstanding 860 shares of the capital stock of said company, of the par value of $100 each, and that there were present at said meeting, either in person or by proxy, stockholders representing at least 489½ shares of the capital stock, and being a quorum; that at the hour fixed, the stockholders present organized the meeting by the unanimous election of Dr. Charles J. Hemminger as chairman and M. T. Stewart as secretary, called upon H. F. Berkebile, secretary and treasurer of the company, to produce the bylaws, stock ledger or stock certificate books, and other records in his possession or control, who stated that there were no bylaws in existence and refused to produce any books except the minutes of the directors' meeting held for the purpose of selecting the judges of election, only one of whom appeared, J. R. Shanks, and the stockholders thereupon elected Dr. C. T. Saylor and M. T. Stewart to fill the two vacancies and then proceeded to ballot for the election of four directors; that all the stockholders present, either in person or by proxy, cast their votes by written ballots, on which were stated the number of shares owned by each stockholder and the number of votes cast for the respective candidates for directors, and that the judges reported the following results: Levi Wolf, 649 votes; Joseph P. Baine, 654 votes; M. T. Stewart, 630; H. F. Berkebile, 5 votes, Albert Berkebile 5 votes and Irvin Wolf 5 votes, and said Levi Wolf, Baine and Stewart were declared elected as three of the directors, and that the stockholders then proceeded to elect a fourth director, resulting in the election of H. F. Berkebile with 310 votes; that a meeting of the newly-elected direc-

tors was then held for the election of officers, when Levi Wolf, Joseph P. Baine and M. T. Stewart were unanimously elected president, treasurer and secretary, respectively; that after said election of officers a demand was made upon H. F. Berkebile, former secretary and treasurer, to deliver up the books, records, money and property of the corporation, which he refused to do, and that a similar demand was made upon Irvin Wolf, former president, and that he also refused; that said newly-elected officers have the right to possession of all the books, papers, records, money and property of the corporation, and that said Irvin Wolf and H. F. Berkebile, former president and secretary, are unlawfully withholding possession of the same; and prays for an alternative writ of mandamus, which was awarded, returnable March 21, 1938.

To this writ respondents filed an answer, admitting the company's corporate existence, notice to the stockholders of the annual meeting on February 21, 1938, number of shares outstanding; denying the legality of the organization of said meeting and the election of directors and petitioners' election as officers, the refusal of respondent, H. F. Berkebile, to produce bylaws, stock ledger or stock certificate book, or other records in his possession or control; admitting that only one of the chosen judges of election, J. R. Shanks, was present at said meeting, and denying the election of Dr. C. T. Saylor and M. T. Stewart to act as judges of election, and the qualification of the latter to act as such; admitting the demand and refusal to surrender up the books and records of the corporation to petitioners; averring that there was a conspiracy between petitioners and others to conduct said election in an unlawful and disorderly manner to prevent respondent, H. F. Berkebile, from voting the shares owned and represented by himself or by proxy; that after the conclusion of said meeting the said H. F. Berkebile cast his votes, representing 500 shares, and elected Irvin Wolf, Emma Evans, Albert C. Berkebile, and H. F. Berkebile as direc-

tors for the ensuing year; that under the bylaws, rules, and customs of the company, the president, vice president, secretary, and treasurer are elected by the directors at their last meeting in June of each year, and that said officers do not assume their duties until the first day of July; and that the terms of respondents as such officers will not expire until June 30, 1938, regardless of the election held on February 21, 1938.

Preceding this answer, respondents' counsel filed a motion to dismiss the petition and quash the alternative writ of mandamus, and a motion to withdraw the action and discontinue the proceedings, as being unauthorized by the company. The latter motion is supported by the affidavit of respondents and has the corporate seal affixed thereto. Petitioners also filed motions for judgment and peremptory mandamus, to strike off respondents' motion to dismiss petition and quash writ, and to strike off motion to withdraw and discontinue proceedings.

From the pleadings and the evidence it appears that the Rockwood Water Company now has two sets of de facto directors and officers, resulting from the election of directors at the stockholders' meeting held on February 21, 1938, immediately followed by the newly-elected directors' meeting electing new officers. This impossible and intolerable situation at once calls into question, first the legality of the election of directors held at the stockholders' meeting, and, second, the legality of the election of officers at the meeting of the new board of directors. These questions cannot be determined in this proceeding. Quo warranto and not mandamus, is the appropriate remedy when any question arises as to the title to office in a corporation, or the validity of an election: Commonwealth v. Straus, 32 Pa. Superior Ct. 389; Jenkins et al. v. Baxter et al., 160 Pa. 199; Commonwealth ex rel. v. Stevens et al., 168 Pa. 582; Bedford Springs Co. v. McMeen et al., 161 Pa. 639; Commonwealth ex rel. v. Jankovic, 216 Pa. 615; Matthews' Petition, 238 Pa.

419; Deal v. Miller, 245 Pa. 1; Cella et al. v. Davidson et al., 304 Pa. 389; Gallagher v. McAdams, 49 Pa. Superior Ct. 81; Kann v. Kann et al., 27 Dist. R. 185. If judgment of ouster is entered, it may then be enforced by mandamus or injunction, as the case may require.

It is probable that quo warranto proceedings will bring before the court practically the same evidence now in the record, but in this manner the legality of the election and the title to the offices in the corporation can be raised and determined. Disputed questions of fact may be tried before a jury, or may be tried, by agreement of the parties, without a jury under the Act of April 22, 1874, P. L. 109: Kann v. Kann et al., supra. Without attempting presently to pass upon the questions involved, it may be indicated, however, that it is doubtful whether a legal election was held, either of directors or officers, because of many irregularities in the conduct of the election. It is conceded that the annual meeting of the stockholders was regularly convened pursuant to a proper notice, and that the stockholders present in person or by proxy constituted a quorum; and the method of conducting the election is prescribed by the Business Corporation Law of May 5, 1933, P. L. 364, which is a codification of and supplement to the prior law on the subject: Bowman v. Gum Inc., et al., 321 Pa. 516. Section 504 of said act requires that every proxy shall be filed with the secretary. This was not done. Many were filed with the judges of election. Section 510 requires the officer (secretary) having charge of the transfer books for shares of the corporation to make, at least five days before the meeting of shareholders, a complete list of the shareholders entitled to vote at the meeting, arranged in alphabetical order, with the address of and number of shares held by each, which list shall be kept on file at the registered office of the corporation, and shall be subject to the inspection of any shareholder during the whole time of the meeting. This requirement of the law was not complied with. Section 512 provides for the appointment of judges of election. Admittedly, two

of the judges of election appointed by the board of directors in advance of the meeting did not appear, and the vacancies were filled by the appointment of Dr. C. T. Saylor and M. T. Stewart. The latter was a candidate for director which disqualified him to act as judge of election, as the act expressly provides that "no person who is a candidate for office shall act as a judge." This mandatory prohibition of the statute was disregarded. J. R. Shanks, one of the originally appointed judges, refused to sign the report of the result of election; M. T. Stewart was disqualified to act as such; and Dr. C. T. Saylor was the only qualified judge making said count of votes and minority report. On behalf of respondent, H. F. Berkebile, it is contended that he was forcibly prevented from voting the shares of stock held by him, either in person or by proxy, and that the meeting was attended with disorder and violence. He was present in the room during the entire time the election was in progress, but he testified that when he attempted to vote his shares by inserting them in the ballot box, a minute or two before the closing of the polls, he was violently seized by his wrists and arms and thrown to the floor. It is admitted that he was physically restrained from voting, because it is alleged that his attempt to vote was after the polls were declared closed, and that it was an attempt on his part to stuff the ballot box. The evidence concerning this incident of the meeting is sharply in conflict, and might properly be submitted to a jury to find the true facts. If lawfully entitled to vote the shares held by him, he was forcibly prevented from so doing, then the election was illegal; and the subsequent meeting of the directors elected at said stockholders' meeting to elect officers was likewise illegal. On the part of respondents, it is admitted that after the polls had been closed, the ballots counted, the result announced, and the meeting adjourned, he deposited his votes in the ballot box; and that in the evening of that day, C. R. Miller, Clark M. Younkin, and J. R. Shanks, the judges of election originally appointed by the board of directors, met

and counted the votes thus cast, and reported the election of the following directors: Irvin Wolf, Emma Evans, Albert C. Berkebile and H. F. Berkebile, each having received 500 votes. Clearly, this was illegal, and did not constitute an election of said persons as directors: Forsyth et al. v. Brown et al., 2 Dist. R. 765; Commonwealth ex rel. v. Vandegrift, 232 Pa. 53; Commonwealth ex rel. v. Patterson, 158 Pa. 476; 2 Thompson on Corporations (3d ed.) 405, sec. 1013; 2 Cook on Corporations (7th ed.) 1767, sec. 605.

Assuming, however, that the persons named in the petition were duly elected directors, their election as officers seems to have been premature. The answer avers that under the bylaws, rules, and custom of the company, the president, secretary, and treasurer are not elected by the directors until their last meeting in June, each year; and that they do not assume the duties of office until the first day of July. Unfortunately, the bylaws have been lost or destroyed and could not be produced, which would be the best evidence of this fact. In their absence, secondary evidence was admitted to prove their contents as to the time of election and taking office, which was corroborated to some extent by the minutes of meeting for the election of officers for several years past. If this be true, then the terms of the present officers will not expire until June 30, 1938; and the application for writ of mandamus was prematurely made. In view of the foregoing irregularities in the conduct of the election at the stockholders' meeting, and the doubtful right of the persons named to take and hold offices in the corporation, a writ of peremptory mandamus cannot issue at this time.

This case presents a contest between two rival groups or factions of stockholders of a corporation in an effort to gain or retain control of the management of its corporate functions, through the election of directors and officers, intensified by considerable personal feeling. Because of this fact, it may be doubted whether the stockholders can hold a fair, orderly, and lawful election with-

out the supervision of the court. Under section 8 of the Act of April 29, 1874, P. L. 73 (now repealed), the court of common pleas had power to order a new election, upon petition of not less than five stockholders supported by satisfactory proof. While said act was expressly repealed by the Business Corporation Law, yet the latter act contains in section 6 this provision:

"This act shall not be deemed to curtail in any manner whatsoever the law or equity jurisdiction of the courts of this Commonwealth."

The power of supervision and control of corporations conferred by the Act of June 16, 1836, P. L. 784, upon courts of equity may be invoked to supervise and control corporate elections, where by reason of fraud, violence, or other unlawful means a fair and honest election cannot be held: Tunis et al. v. Hestonville, Mantua & Fairmount Passenger R. R. Co. et al., 149 Pa. 70; Jenkins et al. v. Baxter et al., supra; National Transit Co. et al. v. United States Pipe Line Co., 180 Pa. 224; Lutz v. Webster, 249 Pa. 226. The discontinuance of the office of master in chancery has not affected the authority of a court of equity to supervise and control a corporate election: Deal v. Erie Coal & Coke Co., 248 Pa. 48 (Somerset Co.).

In conclusion, it may be suggested as a solution of the present controversy that a special meeting of the stockholders be called, after due notice, for two purposes: First, the adoption of a new set of bylaws prescribing the time and place for holding the annual meeting of stockholders, and the meeting of the board of directors for the election of officers, etc.; and second, the holding of a new election of a board of directors, to be followed by the election of officers for the ensuing year. If this is not done, the court, in the exercise of its equitable powers, will, upon a proper bill of complaint by stockholders, supported by satisfactory evidence, order a new election to be held and appoint a master to conduct the same to the end that a fair, orderly, and lawful election by the stockholders may be held.

*Order*

Now, May 31, 1938, a peremptory writ of mandamus is refused and the petition for an alternative writ is discharged, without prejudice to the right of petitioner to institute quo warranto proceedings, or stockholders to file a bill in equity for a decree ordering a new election and the appointment of a master to conduct the same.