# Duquesne City *v.* Fincke, Appellant.

*Courts—Jurisdiction—Superior Court.*

1. The jurisdiction of the Superior Court is purely statutory, and it cannot review judgments of the lower courts unless expressly authorized so to do.

*Appeals—Review — Jurisdiction — Certiorari—Examination of opinion of court below.*

2. Although an appeal is not expressly given, appellate courts can always review, on certiorari, questions regarding the jurisdiction of the lower courts or touching the constitutional rights of the litigants.

3. In determining these matters, if the case is one not arising in the course of the common law, the appellate court may examine the opinion of the court below in order to ascertain the reasons for its action.

*Constitutional law—Public meetings—Streets—Municipalities—Ordinance—Discrimination.*

4. Neither the 14th amendment to the federal Constitution, nor sections 7 and 20 of the Bill of Rights of the state Constitution, vest in the citizens a constitutional right to hold public meetings upon the streets of a municipality.

5. Streets are not intended for the purpose of assemblage, but of passage.

6. He who claims the right to use the streets for the purpose of assemblage, must show some constitutional or statutory authority so to do, either directly given thereby or by the municipality in the exercise of a power thereby conferred upon it.

7. The courts cannot interfere with a municipality's exercise of conferred power, if exercised in a reasonable, lawful and constitutional manner.

8. Where it appears that a municipal officer has acted in accordance with a discretion legally vested in him, the courts have no power to interfere therewith.

9. The courts may overturn arbitrary and intentional unfair discrimination in the administration of an ordinance, as fully as they may review an arbitrary and intentional discrimination appearing in the ordinance itself.

Argued October 18, 1920.   Appeal, No. 168, Oct. T., 1920, by defendant, from judgment of County Court, Allegheny Co., No. 481, 1920, imposing fine and imprisonment on summary conviction in case of City of Duquesne v. W. M. Fincke. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Complaint for violating city ordinance relating to street meetings. Before KENNEDY, P. J.

The opinion of the Supreme Court states the facts.

The court imposed a sentence of fine and imprisonment. W. M. Fincke appealed.

*Error assigned* was judgment of court, quoting it.

*L. K. Porter* and *Thos. L. Morris,* for appellant.—Arbitrary power over various permits for mercantile and mechanical pursuits is void: Baltimore v. Radecke, 49 Md. 217; Richmond v. Dudley, 13 L. R. A. 537; Barthet v. New Orleans, 24 Fed. Rep. 564; State v. Manher, 9 Southern Rep. 48; St. Louis v. Russell, 20 L. R. A. 721; Garrabad v. Dering, 84 Wis. 585; Trenton v. Clayton, 50 Mo. Appeals 535.

There are no Pennsylvania decisions which rule the present case and we cite the cases below for the purpose of distinguishing them from the case at bar: Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355; Com. v. Mervis, 55 Pa. Superior Ct. 178; Com. v. Curtis, 55 Pa. Superior Ct. 184.

The Duquesne ordinance is unconstitutional as a violation of the Fourteenth Amendment of the Constitution of the United States.

The court has jurisdiction on appeal: Pittsburgh v. Pierce, 69 Pa. Superior Ct. 520; Com. ex rel. v. Speer, 267 Pa. 129; Com. v. Burkhart, 23 Pa. 521; Hand's Case, 266 Pa. 277.

*Hallock C. Sherrard,* with him *W. M. Ewing,* for appellee.—The scope of the inquiry in this court is only as a certiorari: Robb's Case, 188 Pa. 212.

The ordinance is constitutional: Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355; Powell v. Penna., 127 U. S. 678; Powell v. Com., 114 Pa. 265; Com. v. Curtis, 55 Pa. Superior Ct. 184; Com. v. Mervis, 55 Pa. Superior Ct. 178.

There was no abuse of discretion on the part of the mayor: Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355; Com. v. Muir, 1 Pa. Superior Ct. 578; O'Maley v. Freeport, 96 Pa. 24; Fisher v. Harrisburg, 2 Grant 291; Penna. R. R. v. Riblet, 66 Pa. 164; Scranton v. Straff, 28 Pa. Superior Ct. 258.

OPINION BY MR. JUSTICE SIMPSON, December 31, 1920:

Defendant was tried, convicted and sentenced for the breach of an ordinance of the City of Duquesne, which forbids the holding of public meetings on its streets without obtaining a permit therefor; the County Court of Allegheny County sustained the conviction but reduced the sentence, and from its judgment the present appeal was taken.

Appellee raises three preliminary questions: (1st) Assuming a certiorari is permissible, should it not have been issued by and made returnable to the Superior Court? The jurisdiction of that court is purely statutory, however, and since it has not been vested with power to review the judgments of the county court in this class of cases, appeals therefrom must be taken to the Supreme Court: Pittsburgh v. Pierce, 69 Pa. Superior Ct. 520; Com. ex rel. v. Speer, 267 Pa. 129. Appellee has not argued that the writ should not have been issued unless specially allowed, and hence we do not decide this point. (2d) Is an appeal allowable? Assuming it is not provided for by statute, this court nevertheless has always had and still has the right to review on certiorari all questions regarding the jurisdiction of the lower courts, and all issues as to the constitutional rights of the parties litigant: Com. v. Balph, 111 Pa. 365; Com. v. Smith, 185 Pa. 553. (3d) Can the court look further than to see if the proceedings below are regular? It is not necessary to consider how far, if at all, the Act of April 18, 1919, P. L. 72, is applicable; for the decision of the matters at issue here does not depend on the testimony taken in the court below, and, the case not being one arising in the course of the common law, we may examine the opinion filed in order to ascertain the reasons for the court's action: McCauley v. Imperial Woolen Co., 261 Pa. 312, 322.

Viewing the record from this standpoint, we find that, as required by the ordinance, an application was duly made to the mayor for a permit to hold a meeting on the streets at a point specified, "or at such other place in the city suitable for the purpose, which may be designated by you." Two other applications of similar import were presented to him, and though all three were in proper form they were not acted upon in any way. This was a mistake of the mayor, for there is necessarily implied, in the power thus vested in him, a corresponding duty to grant or refuse a permit whenever an application therefor is made. His failure to act is especially

to be regretted in the present instance, for it gave appearance of truth to the probably unwarranted complaints of those who averred the applicant and those who associated with him were ignored because the mayor did not like them or the cause they represented, and who alleged that, if the applications had come from more influential persons, they would have been acted upon and probably granted. In all other respects the mayor was well within his rights in what he did; a strike was on which divided even the workingmen into opposing factions, and thus gave to those agitators, who are the enemies of all government, the opportunity, which they eagerly seized, to stir up strife and disorder, by distributing anonymous and seditious pamphlets throughout the city; and hence, as the mayor was responsible for the maintenance of peace and good order, he was justified—if he believed the public good required it, as he says he did—in refusing a permit for an open air meeting at this particular time. This being so, a courteous reply so stating would have removed all just cause of complaint, for it would have sent the applicant to the courts for redress, if he still thought he was being discriminated against. Though not so designed, the failure to reply tended to bring the administration of the law in the City of Duquesne, and through it our entire system of government by law, into disfavor. Our public officials, from the highest to the lowest, but especially the executives of our municipalities, with whom the citizens most frequently come in contact, should in all matters carefully avoid even the appearance of favoritism, lest a semblance of justification should be given to the untrue statement, now too often heard in the centres of population, that our government (as well as those of the old world), is being administered for the advantage of the few and not for the benefit of all.

Not having received the permit requested, defendant and those associated with him nevertheless attempted to hold a meeting on the streets of the city.; he was ar-

rested, and now claims they had a right so to do, under the 14th amendment to the Constitution of the United States, which provides "That no State shall......deny to any person within its jurisdiction the equal protection of the laws"; and under section 7 of the Bill of Rights of the Constitution of this State, which avers that "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty"; and also under section 20 thereof, which states that "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance."

So far as the 14th amendment is concerned, the Supreme Court of the United States—whose judgments are final in the interpretation of the federal Constitution—has expressly ruled against the claim now made by appellant, in Davis v. Massachusetts, 167 U. S. 43. In that case Davis claimed the right to preach the gospel on Boston Common, in accordance with a long-established custom, despite the fact he had no permit so to do from the mayor of the city, as required by one of its ordinances. He was tried, convicted and fined, and therefrom appealed on the ground that under the 14th amendment he had a constitutional right to address an assembly at that place. The court said: "The 14th amendment to the Constitution of the United States does not destroy the power of the states to enact police regulations as to the subjects within their control......and does not have the effect of creating a particular and personal right in the citizen to use public property in defiance of the Constitution and laws of the State," and for this reason decided the requirement of a permit was only a reasonable regulation by the city. To the same effect are Wilson v. Eureka City, 173 U. S. 32; and State ex rel. Lieberman v. Van de Carr, 199 U. S. 552.

Under these authorities it is clear the 14th amendment is not violated by the passage and enforcement of the Duquesne ordinance, and defendant's constitutional right must be predicated, if at all, on the above quoted 7th and 20th sections of the Pennsylvania Bill of Rights. His contention founded thereon, however, overlooks the fact that they do not give to him the right to assemble with others and to speak wherever he and they choose to go. He would hardly admit that others would have the right so to do in his house, without his consent; and doubtless would concede the same to all other citizens. If he wishes to address an assemblage he must gather his audience together in places where he and they have the right to be for this purpose; and the streets are not such places, since they are intended for passage and not for assemblage. As was said in Barker v. Com., 19 Pa. 412, 413: "The streets are common highways, designed for the use of the public in passing and repassing, and in such temporary occupancy as are incidental to the exercise of these rights, or necessarily connected with them. No one has a right to obstruct a public street by collecting therein a large assemblage of men and boys, for the purpose of addressing them......The common highways were designed for no such purpose. If the purposes of the meeting be lawful, a suitable place can be obtained for it, without obstructing the public in their undoubted right of passing along their own highway. The liberty of speech does not require that the clear legal rights of the whole community shall be violated."

It follows that our bill of rights no more prevents regulation in the use of the streets, than does the 14th amendment to the Constitution of the United States; and as these questions were the only ones argued before us, we might well close our opinion at this point. Respect for the defendant, however, and those who were associated with him, and with full acceptance of the statement of their counsel that they seek but to know

and obey the law, impels us to continue the discussion a little further.

Aside from the constitutional questions, the alleged right to hold an assembly upon the public streets, can only be justified if it be shown it is inherent in the citizen, or is conferred by statute, or by an ordinance passed in pursuance of a statute. That it is not inherent is covered by what has already been said, and is made clear by the following quotation from Davis v. Massachusetts, supra: "The legislature as representative of the public may and does exercise control over the use which the public may make of such places, and it may and does delegate more or less of such control to the city or town immediately concerned. For the legislature absolutely or conditionally to forbid public speaking in a highway or public park is no more an infringement of the rights of a member of the public, than for the owner of a private house to forbid it in his house." If this were not so, then any and every citizen would have an equal right with defendant and might call such meetings without let or hindrance, some, like him and his associates, to discuss the important subject of "the cause of organized labor" (with which the writer has been in full accord for over half a century, during nearly seven years of which he was himself a mechanic, and for a generation more represented many others as their counsel); and many to discuss all sorts of wise or foolish subjects which find lodgment in the mind of man. This would make "confusion worse confounded," and the streets which, as stated, are "designed for the use of the public in passing and repassing," would at times become nearly or quite impassable; and the citizens who wish to so use them, would have to give way to those who occupied them for purposes for which they were never intended. It may be this would not often happen, but it would surely do so in times of stress, when the peace and quietness which lead to thoughtful consideration are most needed; and this possibility warns us that unless regulation is vested

somewhere we may renew in our large cities the disorders which have recently appeared in those of the old world. We know this defendant and those associated with him, as good citizens, desire nothing which would make this even possible.

The streets, as streets, belong to the State (O'Connor v. Pittsburgh, 18 Pa. 187; 3 Dillon on Municipal Corporations, 5th ed., sections 1161, 1163), and hence she may forbid their use for public meetings, or may regulate it, or may delegate to her agent, the city, the right so to do. All the cases concede this; and indeed the power to regulate, where she may forbid, is a necessary result of the maxim omne majus continet in se minus: Phila. v. Brabender, 201 Pa. 574, 577;. Fischer v. St. Louis, 194 U. S. 361. It follows that he who would use the streets for the purpose of assemblage must show some direct authority from the State or from the city in the exercise of a power conferred on it by constitution or statute.

Direct authority from the State to the citizen not being claimed or appearing, we must examine the statutes to ascertain what power on this subject has been given to the municipality. As a city of the third class, her powers are specified in the Act of June 27, 1913, P. L. 568; and in addition to those expressly given, it is provided in article V, section 2:

"29. To prevent and restrain riots, noises, disturbances or disorderly assemblages in any street, house or place in the city......"

"46. To make all such ordinances, by-laws, rules, and regulations, not inconsistent with the Constitution and laws of this Commonwealth, as may be expedient or necessary, in addition to the special powers in this section granted, for the proper management, care, and control of the city and its finances, and the maintenance of the peace, good government, safety, and welfare of the city, and its trade, commerce, and manufactures, and the same to alter, modify, and repeal at pleasure; and

to enforce all ordinances by inflicting penalties upon inhabitants or other persons for violation thereof, not exceeding one hundred dollars for any one offense, recoverable with costs, together with judgment or imprisonment, not exceeding thirty days, if the amount of said judgment and costs shall not be paid."

Under authority less extensive than this, we held in O'Maley v. Borough of Freeport, 96 Pa. 24, 30: "That the power here conferred is sufficiently comprehensive to cover every regulation necessary for the government of the borough and protection of its citizens, cannot, we think, be doubted. The only limitation of this power is, that it must be exercised in a reasonable, lawful and constitutional manner. If these limitations are not transgressed courts cannot interfere with the ordinances of this municipality, for to the burgess and council must be left a reasonable discretion, and for the proper and wholesome exercise thereof they are accountable, not to the courts, but to the people whom they represent." To the same effect is Commissioners of the Northern Liberties v. Northern Liberties Gas Co., 12 Pa. 318; and Phila. v. Brabender, 201 Pa. 574. Assuming, therefore, that the sections quoted gave to the city the power to permit assemblages on the streets, it is clear, for the reasons hereinbefore stated, she had the right to equally and impartially limit them to such proper times and places, and under such restrictions and limitations, as in her opinion would best conserve "the peace, good government, safety and welfare of the city." She claims this is all she did in the present instance, and, as there was evidence to that effect, we cannot, on certiorari, overrule her exercise of discretion, even though we might think the power should not have been conferred on her: Ligonier Valley R. R. Co. v. Latrobe Borough, 216 Pa. 221.

It follows that defendant and those associated with him had no right, upon any ground, to hold a meeting in the streets without a permit. If they thought the city had power to authorize the meeting, but the mayor was act-

ing arbitrarily in refusing the permit, their·remedy was not by violating the ordinance, but by mandamus to compel a proper obedience to it; in which proceeding the courts would have overturned "arbitrary and intentional unfair discrimination in the administration of the ordinance" (Mackay Telegraph and Cable Co. v. City of Little Rock, 250 U. S. 94, 100, citing and construing Yick Wo v. Hopkins, 118 U. S. 356), if any such discrimination existed, just as certainly as they would have declared void the ordinance itself if of opinion it had no constitutional authority to support it.

What has been said covers all the questions within the line of appellant's claim; and we only need add, in order to avoid any misunderstanding as to the scope of the opinion, that it is limited to the negation of the contention that he had any constitutional, inherent or statutory right to hold a meeting in the streets of the city; all other matters which may arise under the statute and ordinance are beside this inquiry, and will be determined when, if ever, they reach us on appeal.

The judgment and sentence of the court below are affirmed.