# State Grand Lodge of Pennsylvania, etc., Appellant, v. Morrison et al.

*Contempt of court—Civil proceedings—Appeals—Refusal to obey decree—Attachment—Default.*

1. An appeal will lie in contempt proceedings in certain civil actions.

2. Where the court below has refused to grant an attachment for contempt against defendants who have refused to obey a final decree of the court, made after full hearing and in the exercise of complete jurisdiction over the subject-matter and persons concerned in the litigation, an appeal will lie.

3. In reversing such decree the appellate court will order the record to be remitted with directions that an attachment issue against each of the defendants requiring each of them to pay to the commonwealth for the use of the plaintiffs such sum of money as to the court shall seem meet, and in default thereof, or of a failure to otherwise promptly comply with the decree of the court, that those who continue in default in either respect shall be com-

mitted to the county jail until they have fully purged themselves
of their contempt.

*Beneficial associations—Illegal lodges—Defiance of decree—Contempt.*

4. Where persons have been enjoined from maintaining lodges of
a beneficial association within the state under the state organization of the fraternity, they cannot, either under a subterfuge created by themselves, or under a national body, erect hostile lodges in
defiance of the state authority and the court's order, and if they
do so they may be attached for contempt.

Argued January 16, 1923. Appeal, No. 217, Jan. T.,
1923, by plaintiff, from decree of C. P. No. 1, Phila. Co.,
March T., 1919, No. 2886, dismissing rule for attachment,
in case of State Grand Lodge of Pennsylvania of the
Loyal Orange Institution of the United States of America, incorporated under the laws of the State of Pennsylvania in name of Loyal Orange Institution of the
State of Pennsylvania v. John Morrison et al., members
and officers attempting to constitute themselves the
Star Spangled Banner Loyal Orange Lodge No. 65 of
the Loyal Orange Institution of the United States. Before FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER,
JJ. Reversed.

Petition for attachment. Before PATTERSON, P. J.
The opinion of the Supreme Court states the facts.
Petition dismissed. Plaintiff appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Walter L. Sheppard* and *W. W. Porter,* of *Porter,
Foulkrod & McCullagh,* for appellant.—The appellate
court has jurisdiction to entertain this appeal and review
the action of the court below in the premises: Fullerton
v. Peabody, 2 Pa. Superior Ct. 145; Seidman's Est., 270
Pa. 465; Palmer v. Central Board, etc., 40 Pa. Superior
Ct. 203; Bessette v. Conkey Co., 194 U. S. 324.

The petitioners are entitled to an order committing the respondents until they discontinue maintaining a lodge organization in the same name as the suspended lodge, or in any other name like or similar thereto: Loyal Orange Institution v. Morrison, 274 Pa. 302.

*C. Oscar Beasley,* for appellees.—No appeal lies in Pennsylvania from the discharge of a rule to show cause why a defendant should not be declared in a contempt: Seidman's Est., 270 Pa. 465.

OPINION BY MR. JUSTICE KEPHART, February 20, 1923:
That an appeal will lie in contempt proceedings in certain civil actions has been definitely decided by this court in an opinion by Mr. Justice SIMPSON in Scranton v. Peoples Coal Co., 274 Pa. 63. The denial of this relief, necessary to the enforcement of a decree, is tantamount to a denial of the decree. This case presents one of the few instances where litigants have been permitted to be guilty of a contemptuous refusal to obey a final decree of a court,—made after full hearing in the exercise of complete jurisdiction over the subject-matter and persons concerned in the litigation.

The difficulty first arose from a division among the members of a fraternal organization, the Loyal Orange Institution of the United States of America. It occurred in 1913. An action was instituted in the Court of Common Pleas of Philadelphia County, affirmed by the Superior Court (Dunlap v. Harbinson, 66 Pa. Superior Ct. 564), wherein it was held the appellants in the present proceeding were the rightful officers to exercise the powers and duties of the State Grand Lodge of Pennsylvania. This determination was reached after a complete investigation, and was declared to be in conformity with the constitution and by-laws of the order, both state and national. The finding of the court in that case fully adjudicated the rights of the parties. Following that case, a second action was instituted in Philadelphia County

against the Star Spangled Banner Loyal Orange Lodge No. 65 of the Loyal Orange Institution of the United States, and these defendants as members and officers. This lodge declined to submit to the control of the State Lodge, declared by the Superior Court to be the lawful organization. The court below, following the order of the Superior Court, declared plaintiffs, whether acting through a corporation or an unincorporated body, were the lawful officers of the State Grand Lodge, and that defendants were in rebellion against that authority. They were, by that decree, required to deliver to plaintiffs, the officers of the State Grand Lodge, the property, funds and assets of Lodge No. 65. They were also ordered to cease "from using or employing in any manner, without the consent of the plaintiff State Grand Lodge, the name 'Star Spangled Banner Loyal Orange Lodge No. 65 of the Loyal Orange Institution of the United States of America,' or any other name like or similar thereto; [and were enjoined] from aiding and supporting......any other organization in the State of Pennsylvania......claiming or attempting to be or function, either nominally or substantially, as a State Grand Lodge of the Loyal Orange Institution of the United States of America."

Notwithstanding the decree thus entered, affirmed here 269 Pa. 564, defendants refused to obey, compelling plaintiffs to petition for an attachment. See Patterson v. Wyoming Valley District Council, 31 Pa. Superior Ct. 112. Though hearings were had, defendants still did not comply with the decree in respect to many of its terms, and, June 1, 1921, the court ordered the attachment to issue against all of these respondents. The attachment did not go forth, however, because of repeated assurances to plaintiffs and the court, by and on behalf of these respondents, that the decree would be complied with.

In utter disregard of the then existing orders, and staying their execution, on May 8, 1922, a second appeal was taken to this court from an order discharging a

rule issued at defendant's instance, wherein the original proceeding was in part attempted to be reopened. In affirming the court below, we strongly intimated this was an effort to evade the decree formerly entered, saying (274 Pa. 302, 303), "It is apparent, however, if such practice is permitted, orders and decrees of a court can be very much abused by supplemental petitions and appeals, to the detriment of the administration of justice." The petitioner in this latter proceeding with the utmost contempt for the decree of the court below, as affirmed by this court, boldly asserted he was the master of a lodge that had been declared by final decree to be out of existence because its officers and many of its members were in rebellion against the state lodge, the then officers having been ordered to transfer all rights, property and other effects to plaintiff State Grand Lodge; and though petitioner and those associated with him (these defendants) were ordered to desist from simulating the name or practices of plaintiff organization, through lodges or otherwise, they nevertheless set up hostile lodges under former names, and then had the temerity to come into court as the master and members of illegal lodges, in effect, to foil the decree. Plaintiff, during this time, was endeavoring to reëstablish the lodge with those adhering to the laws of the order.

In the last appeal (274 Pa. 302) we reiterated the effect of the final decree, the violation of which was in substance the complaint lodged before the court below in the present contempt proceeding. We there concluded our opinion by saying that the conduct of the defendants was "without respect for the decree of the court as originally made. Extreme leniency seems to have been exercised in forcing obedience to that decree, and, if complainants are to receive full credit for the order made, the decree should be enforced in the manner directed by law. The orders and decrees of courts of law, made after full hearing, should not be permitted to be trifled with in the manner appearing in this case." An

order was made directing the court below to execute the original decree. No forward step to obey was taken and plaintiffs again repetitioned for an attachment for contempt. The court below, after hearing, found defendants had refused to turn over some $1,700; it directed this sum to be paid, but dismissed all other grounds of complaint, and the attachment with them. This in the face of its orders and the facts, appearing from the uncontradicted evidence, that some of these defendants attended a meeting of the national body of the Loyal Orange Institution of the United States of America, with which the present plaintiff was decreed to be affiliated, and procured from that body some authority authorizing the formation of county lodges, the evident purpose of which was to supplant and take the place of the State Grand Lodge. The national body, exercising authority in this State, could not summarily sweep away the rights of the State Grand Lodge and the many subordinate lodges without some default by the latter organizations; certainly this could not be done through the connivance of these defendants, or others for them.

Defendants, with others dissatisfied with the state authority, organized themselves into various local lodges conducted under the same national authority as prevails for the lawful state order. County lodges were organized, to whom these local bodies were obedient, acknowledging direct allegiance,—the county lodges, in turn, being directly under the National Loyal Orange Institution of the United States. Names of the local orders were slightly changed by merely striking out an immaterial part, leaving the balance substantially as it was before the decree was made; for instance, in the "Star Spangled Banner Lodge No. 65 of the Loyal Orange Institution of the United States of America," the words "Star Spangled Banner" were omitted, and the lodge was called "Universal Lodge No. 65 of the Loyal Orange Institution of the United States of America." Almost everything done by these defendants was apparently a studied

effort to avoid the decree.   There is no attempt to deny
that in all respects they function in the same manner
and under the same forms as they did before the decree
was made.

To set at naught decrees of a court without injury
resulting therefrom might, in exceptional cases, be con-
doned, but to set at defiance those decrees where property
and individual rights are solemnly finally adjudicated,
and to raise impediments to frustrate the execution of
these decrees, is without a semblance of justification.   If
any court permits such contempts to go unpunished, it
might as well close its doors, proclaim itself incapable of
functioning, and become itself contemptible.   We have
not at all reached this stage; the court below is not with-
out power to vindicate its own decrees and to punish for
disobedience.   Nor will we, for reasons unknown, permit
lower courts to refuse, without cause, to enforce its de-
crees, where such refusal works a palpable abuse of dis-
cretion, as it does in this case.

These appellants were entitled to relief.   The defend-
ants could not continue their affairs in Pennsylvania
under the Loyal Orange Lodge of the Loyal Orange
Institution of the United States any more than another
foreign body could justifiably claim it was the lawful
authority.   By being in harmony with the state lodge,
they could contest in a legal way and through proper
channels, but, outside of it, they have no standing
in Pennsylvania under any subterfuge created by them-
selves or the national body.   As long as they remained
within the fold they could be a warring faction, keeping
within its laws; when they left, as they did by erecting
hostile lodges in defiance of state authority and the
court's order, they surrendered their rights under the
same laws.

The order of the court below is reversed, the defend-
ants are adjudged to be in contempt and the record is
remitted with directions to enter an order that an at-
tachment issue against them requiring each of them to

pay to the Commonwealth of Pennsylvania for the use of the plaintiffs, such sums of money as to the court below shall seem meet, and in default thereof or of a failure to otherwise promptly comply with the decrees of said court, those who continue in default in either respect shall be committed to the county jail until they have fully purged themselves of their contempt. Costs to be paid by appellees.