## Commonwealth, Appellant, *v.* Guardiani.

Argued March 26, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Martin H. Belsky,* Assistant District Attorney, with him *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Miriam L. Gafni,* with her *Piwosky and Gafni,* for appellee.

OPINION BY SPAETH, J., September 19, 1973:

Appellee was arrested and charged with malicious use of the telephone (among other offenses). A detective of the Philadelphia Police Department obtained from a judge of the Municipal Court a search warrant ordering appellee to give voice prints to the Commonwealth. When appellee refused, the Commonwealth asked a judge of the Court of Common Pleas to hold appellee in contempt. After argument and briefs, the judge held that "the search and seizure warrant was validly issued and . . . if a voice print can legally be requested to be given involuntarily, the defendant [appellee] would properly be held in contempt of court." The judge further held, however, that "a voice print bears the same lack of scientific reliability as a polygraph test, and therefore, should be administered only under the same circumstances, namely a waiver. There being no waiver and no voluntary submission, no requirement that an individual submit to an involuntary voice print test [exists]. I find the contempt order without warrant, and therefore, discharge the defendant from the contempt citation." The Commonwealth has appealed from this order, arguing that appellee should have been held in contempt because "[c]ompelling one to give a voice sample is no different than

compelling an individual to submit to a lineup, finger-printing, photographing, or blood sampling." (Commonwealth's Brief at 6.) We do not reach this interesting question because, as will appear, the Commonwealth's appeal must be quashed.

"The Superior Court derives all its jurisdiction and powers from statute. See Duquesne City v. Fincke, 269 Pa. 112, 115, 112 A. 130; Commonwealth v. Long, 276 Pa. 154, 156, 120 A. 125; Commonwealth ex rel. v. Speer, 267 Pa. 129, 134, 110 A. 268; cf. Pittsburgh v. Pierce, 69 Pa. Superior Ct. 520, 524. Hence, no right of appellate review exists in that court in any instance except it be expressly authorized by statute." *Commonwealth v. Harris*, 409 Pa. 163, at 171, 185 A. 2d 586, at 590, quoting from *Bell Appeal*, 396 Pa. 592, 597, 152 A. 2d 731, 734 (1959).

The statute authorizing appeals to the Superior Court is the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, No. 223, 17 P.S. §211.-101 *et seq.* Section 302 of the Act, 17 P.S. §211.302, provides: "The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or amount involved, except such class of appeals as are by any section of this act within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court."

The refusal of a lower court to enter an order holding someone in contempt may be a "final order", but only if the refusal is tantamount to denying to the party requesting the order relief to which that party has a right under an earlier final order. Thus, in *State Grand Lodge of Pa. v. Morrison*, 277 Pa. 41, 120 A. 769 (1923), an appeal was held to lie in a contempt proceeding where the lower court had entered a decree requiring the defendants to deliver certain property to the plaintiffs, the decree had been affirmed, the defend-

ants had refused to obey, and yet the plaintiffs' petition for attachment was denied. In adjudging the defendants in contempt, with a direction to the lower court that attachment issue, the Supreme Court said: "[T]o set at defiance those decrees where property and individual rights are solemnly finally adjudicated, and to raise impediments to frustrate the execution of those decrees, is without a semblance of justification. If any court permits such contempt to go unpunished, it might as well close its doors, proclaim itself incapable of functioning, and become itself contemptible." *Id.* at 47, 120 A. at 771. Similarly, in *Braunschweiger's Estate,* 322 Pa. 394, 185 A. 753 (1936), where an earlier decree directed a fiduciary to make a certain distribution to the petitioner, the decree became final, and yet the fiduciary refused to make the distribution, the lower court's refusal to issue attachment was reversed. *And cf. Aungst Contempt Case,* 411 Pa. 595, 192 A. 2d 723 (1963) (affirming an order denying a petition for a contempt order where the petition was "separate and independent of any other action or litigation"), and *Davidyan v. Davidyan,* 333 Pa. 465, 3 A. 2d 921 (1939) (affirming an order denying a petition for a contempt order where although the petitioner sought to compel the respondent to obey an earlier final decree directing the conveyance of real estate the chancellor as a matter of sound discretion found that the respondent was unable to obey). In the present case there is no final order the effectiveness of which has been denied by the order of the court below refusing to hold appellee in contempt.

The order of the court below might nevertheless be held "final" upon allegation that the order will result "in an absolute termination of the prosecution . . . [or] in a prosecution wherein the Commonwealth is substantially handicapped because it cannot present all its available evidence." *Commonwealth v. Pomponi,*

436 Pa. 565, 568, 259 A. 2d 872, 874 (1970), citing *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304, *cert. denied*, 375 U.S. 910 (1963). However, the Commonwealth has made no such allegation. Nor does it appear that the allegation could be made. The warrant ordering appellee to give voice prints discloses in the recitation of probable cause that three witnesses have identified appellee's voice on tapes of two of the telephone calls in question, and that "[t]he Bell Telephone Company traced the origin of [certain others] calls, and determined that they were made with the telephone listed for [appellee]."*

Since the order of the court below is not appealable as a final order within Section 302 of the Appellate Court Jurisdiction Act, *supra*, 17 P.S. §211.302, the question is presented whether it is appealable under some other section of the act. The only possibly pertinent other section is Section 501, 17 P.S. §211.501. Section 501 permits an appeal from an interlocutory order where "authorized by law", as, for example, where there has been a preliminary determination of jurisdiction. Act of March 5, 1925, P. L. 23, §1, 12 P.S. §672. However, there is no law authorizing an appeal from an interlocutory order in a contempt case. Section 501 also permits an appellate court "in its discretion" to entertain an appeal where "a court or administrative agency, in making an interlocutory order . . . [states that it is] of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter. . . ."

---

* By letter of July 10, 1973, the Commonwealth wrote the Court, stating that it intended to proceed with the trial. The Commonwealth also requested in this letter leave to withdraw its appeal. In view of the importance of the jurisdictional question presented, however, the request was denied. See Superior Court Rule 10.

However, there has been no such statement by the court below.

Finally, the question is presented whether this Court should certify the Commonwealth's appeal either to the Supreme Court or the Commonwealth Court. There is no provision of the Appellate Court Jurisdiction Act, *supra,* suggesting certification to the Commonwealth Court. Section 202 of the Act, 17 P.S. §211.202, specifies in which cases the Supreme Court has exclusive jurisdiction. Included are cases of "[d]irect criminal contempt in the courts of common pleas and other contempt proceedings in the courts of common pleas relating to orders which are appealable directly to the Supreme Court." However, appellee's conduct, if contempt, was neither "direct criminal contempt", for it did not occur in the presence of the court, Act of June 16, 1836, P. L. 784, §§23, 24, 17 P.S. §§2041, 2042; *Commonwealth v. Harris,* 409 Pa. 163, 185 A. 2d 586 (1962), nor was it related to an order "appealable directly to the Supreme Court".

The appeal is quashed.

---

DISSENTING OPINION BY HOFFMAN, J.:

This appeal stems from the refusal of the court below to hold the appellee in contempt following her refusal to submit to a spectrograph or voice print test.

On April 21, 1972, the Philadelphia District Attorney's office appeared before the Honorable Lois G. FORER and requested that the appellee, Evelyn Guardiani, be held in contempt of court for failing to comply with a validly issued search warrant. Under the terms of the warrant, the appellee was ordered to undergo a spectrograph test. Judge FORER refused to hold the appellee in contempt and ruled that such a test was not the proper subject matter for a search warrant. Following this decision, the Commonwealth appealed to this court.

On July 10, 1973, the Commonwealth requested leave of this court to withdraw its appeal conceding the correctness of the lower court's ruling. This concession leaves us without a case in controversy and renders any decision an advisory opinion. A petition to withdraw an appeal should be granted absent extraordinary circumstances requiring that this court decide an issue. No such circumstances appear herein. Furthermore, the refusal to permit the withdrawal prevented the Commonwealth from proceeding immediately to trial. Since the prompt disposition of criminal matters promotes the fair administration of justice, an unnecessary delay should be avoided wherever possible.

Accordingly, the Commonwealth should have been permitted to withdraw its appeal.

SPAULDING and CERCONE, JJ., join in this dissenting opinion.