IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric Joos and Amanda Joos, h/w : 
and Mary Ellen Joos, : 
          Appellants : 
         : 
       v. :    No. 1078 C.D. 2019
        :    Argued: June 8, 2020
Board of Supervisors of Charlestown : 
Township : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT               FILED: July 31, 2020

      Mary Ellen Joos, Eric Joos, and Amanda Joos (Landowners) appeal an order of the Court of Common Pleas of Chester County (trial court) that affirmed the condition that the Board of Supervisors of Charlestown Township (Board of Supervisors) imposed upon Landowners' proposed lot line revision. The condition required Landowners to maintain the existing shared driveway in its current configuration and prohibited the construction of a second driveway. Landowners argue, first, that the Board of Supervisors deviated from the procedures set forth in Sections 503(9) and 508(2) of the Pennsylvania Municipalities Planning Code (MPC)[1] for imposing conditions on a plan. Second, Landowners argue that Charlestown Township's (Township) Subdivision and Land Development Ordinance (SALDO)[2] did not authorize the driveway condition. Finally, Landowners argue that the trial court erred in denying their petition for contempt

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10503(9), 10508(2).

[2] CHARLESTOWN TOWNSHIP MUNICIPAL CODE, Chapter 22, SUBDIVISION AND LAND DEVELOPMENT ORDINANCE, *as amended*, added by Ordinance of May 3, 1982.

filed against the Board of Supervisors. We reverse the trial court's affirmation of the Board of Supervisors' driveway condition but affirm the trial court's denial of Landowners' contempt petition.

## Background

Mary Ellen Joos owns 14.5 acres of land (Parcel A) located at 18 Tiptonbrook Lane in Charlestown Township. Eric and Amanda Joos own 22 acres of land (Parcel B) at 26 Tiptonbrook Lane. The two parcels are contiguous. A private driveway over Parcel A provides access to the residence thereon and to the residence on Parcel B. Tiptonbrook Lane connects to Church Road.

Landowners filed a "Preliminary/Final Subdivision Plan Lot Line Revision Joos Property" (Plan) to move the property line between Parcel A and Parcel B. Reproduced Record at 5a-9a (R.R.__). The Plan provided Parcel A with more yard space, thereby reducing Parcel B's frontage on Church Road.

Daniel Wright, the Township engineer, reviewed the Plan and commented thereon. Wright's letter to the Township Planning Commission of August 26, 2015, stated as follows:

> The net lot area calculation required by Zoning Ordinance 27-405.1 shall be provided on the plans. The net lot area calculation requires the removal from the gross lot area 75% of all floodway, flood fringe and general floodplain areas described in Zoning Ordinance 27-1103.5.C and 75% of aggregate area of all 100-year floodplains, wetland areas and 50-foot wetland buffers, areas of very steep slope as defined by Zoning Ordinance 27-1202.3.C, 25% of areas of steep slope as defined by Zoning Ordinance 27-1202.3.B, areas within existing, public, or private easements or rights-of-way, and any right-of-way or easement connecting an interior lot to a road or street. While the net lot area is listed on Sheet 1, the actual calculation shall be provided on the plans.

2

Original Record (O.R.), Item 3, Exhibit 5.  In short, his comment was limited to the net lot area calculation.

On October 5, 2015, the Board of Supervisors held a meeting on the Plan.  The meeting minutes stated the following:

> [Landowners' engineer] was present on behalf of [Landowners] to present the [Plan] for a lot line revision of two parcels (36.6 acres) on Tiptonbrook Lane.  Telephone lines show a natural delineation where the proposed lot is to be divided, *and there is also a spot for a potential, but not expected driveway.  No construction is planned.*
>
> Five waivers were requested [regarding wetlands; grading; soil, erosion and sedimentation control plan; and a planning module].
>
> [Supervisor] Kuhn moved to approve the lot line revision plan dated December 20, 2014 (Sheet 1) and April 23, 2015 (Sheets 2 and 3), *with five waivers and conditions described by Mr. Wright along with a provision that there be a shared access to the two lots.*  [Supervisor] Philips seconded.  [Supervisor] Piliero called for discussion, and there being none, called the vote.  All were in favor.

R.R. 12a-13a (emphasis added).

On October 19, 2015, the Board of Supervisors issued a written decision approving the Plan with three conditions:

> 1.  The shared driveway located on [Parcel] A accessing Church Road and serving the dwelling on [Parcel] B *shall remain in its current configuration and no additional driveway or driveways accessing Church Road shall be constructed on [Parcel] B.*
>
> 2. The submission of appropriate performance, maintenance and/or escrow financial guarantees as may be applicable, and agreements, all in a form acceptable to the Township Solicitor.
>
> 3. The payment of any outstanding review fees, pursuant to Section 503 of the [MPC], including, but not limited to,

professional consultations, engineering review and reporting, legal documentation and submittal, legal research and other legal services, incurred by the Township, within thirty (30) days after invoicing.

R.R. 16a-17a (emphasis added). The written decision stated that the conditions were "fully acceptable to [Landowners] based upon communications and discussions which occurred during the meeting of the Board of Supervisors[.]" R.R. 16a.

When Landowners objected to the driveway condition, the Board of Supervisors agreed to reconsider. At the November 2, 2015, meeting, Landowners explained that the driveway condition was unnecessary because they did not request approval of a new driveway. The Board of Supervisors advised Landowners either to "resubmit with modifications or appeal last month's approval." Supplemental Reproduced Record at 3b (S.R.R. ___).[3]

On November 18, 2015, Landowners appealed to the trial court. That same day, the prothonotary issued a Writ of Certiorari, commanding the Board of Supervisors to return the record within 20 days. On February 14, 2019, Landowners filed a contempt petition because the Board of Supervisors had not returned the record in accordance with the writ. On February 15, 2019, the Board of Supervisors filed the record, and on April 30, 2019, the trial court denied the contempt petition. On May 14, 2019, the trial court denied Landowners' appeal without taking additional evidence.

In reaching its conclusion, the trial court rejected Landowners' argument that the Board of Supervisors' decision of October 19, 2015, did not

---

[3] With respect to Landowners' objection to the driveway condition, Supervisor Kuhn stated that he was "against any further road cuts for Church Road." S.R.R. 3b. Supervisor Philips opined that the driveway condition would not affect the property's resale value. Supervisor Willig suggested a possibility of rerouting the shared driveway. *Id.*

comply with the notice requirements of the MPC. The trial court held that Section 508(2) of the MPC, 53 P.S. §10508(2), applies when a municipality denies a plan application and not when it approves an application with conditions, as it did in the case of Landowners' Plan. The trial court rejected Landowners' argument that the Board of Supervisors was required to vacate the driveway condition or deny the Plan once it learned that Landowners objected to the condition. Trial Court op. at 5 (citing *Koller v. Weisenberg*, 871 A.2d 286 (Pa. Cmwlth. 2005)).

The trial court concluded that Section 22-506 of the SALDO, which establishes design standards for driveways, authorized the driveway condition. Specifically, Section 22-506(5) states that "[t]he edge of the driveway shall be located not less than 40 feet from the tangent point of the curb radius of corner lots," SALDO §22-506(5), and the trial court found that Parcel B was a "corner lot" under Section 22-202 of the SALDO.[4] Alternatively, the trial court concluded that Landowners applied for "a spot for a potential [] driveway." Trial Court op. at 5. For this finding, the trial court cited the minutes of the meeting on October 5, 2015, where a Board Supervisor stated that "there is also a spot for a potential, but not expected driveway." R.R. 13a.

Landowners requested reconsideration, which the trial court granted on May 29, 2019. Following oral argument, on July 9, 2019, the trial court denied reconsideration and reinstated its May 14, 2019, order. On August 6, 2019, Landowners appealed to this Court.

---

[4] Section 22-202 of the SALDO defines a "corner lot" as:

> A lot or parcel of land abutting upon two or more streets including shared driveways at their intersection, or upon two parts of the same street including shared driveways forming an interior angle of less than 135°.

SALDO §22-202.

**Appeal**

On appeal,[5] Landowners raise three issues. First, they argue that the trial court erred in holding that the procedural requirements set forth in Sections 503(9) and 508(2) of the MPC, 53 P.S. §§10503(9), 10508(2), did not apply to their application. Second, they argue that the trial court abused its discretion in upholding the driveway condition imposed on their request for a lot line revision. Third, they argue that the trial court erred in not sanctioning the Board of Supervisors' willful and prolonged contempt of the Writ of Certiorari. We address these issues *seriatim*.

**Analysis**

**I. Procedural Challenge**

Landowners argue that under Section 503(9) of the MPC, a municipality lacks authority to impose a condition unless it is agreed to by the applicant. Because Landowners did not agree to the driveway condition, the Board of Supervisors lacked the authority to impose it on their Plan. Alternatively, Landowners argue that under Section 508(2) and (3) of the MPC, the Board of Supervisors should have issued "an express, written" denial that referred to the SALDO. Landowners Brief at 15.

The MPC authorizes a municipality to regulate the subdivision and development of land by ordinance. *See* Section 501 of the MPC, 53 P.S. §10501.[6] Section 503(9) of the MPC authorizes a municipality to adopt a SALDO authorizing

---

[5] Generally, where the trial court takes no additional evidence, this Court's review determines whether the governing body has committed an error of law or abused its discretion. *Koller*, 871 A.2d at 289 n.2.

[6] The MPC authorizes land development through the enactment of a subdivision and land development ordinance and provides that the municipality must exercise all powers granted "in accordance with the provisions of the subdivision and land development ordinance." Section 501 of the MPC, 53 P.S. §10501.

6

the imposition of conditions upon land development plans. It states, in pertinent part, as follows:

> The subdivision and land development ordinance *may include*, but need not be limited to:
>
> \*\*\*
>
> (9) *Provisions for the approval of a plat*, whether preliminary or final, *subject to conditions* acceptable to the applicant and a procedure for the applicant's acceptance or rejection of any conditions which may be imposed, including a *provision that approval of a plat shall be rescinded automatically upon the applicant's failure to accept or reject such conditions* within such time limit as may be established by the governing ordinance.

53 P.S. §10503(9) (emphasis added). Section 508(2) of the MPC governs the disapproval of a subdivision and land development plan. It states:

> *When the application is not approved in terms as filed* the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon.

53 P.S. §10508(2) (emphasis added). Further, under Section 508(3), a municipality's failure to render a decision and communicate it to the applicant "within the time and in the manner required herein shall be deemed an approval of the application in terms as presented…." 53 P.S. §10508(3).

This Court has held that Section 508(2) and (3) of the MPC apply only where a municipality denies a plan. *See Koller*, 871 A.2d at 292 (citing *Bonner v. Upper Makefield Township*, 597 A.2d 196 (Pa. Cmwlth. 1991)).[7]

---

[7] In *Bonner*, this Court explained:

7

In *Koller*, the township approved a developer's preliminary subdivision plan with conditions, to which he objected and appealed. The trial court held that the township was required to cite to the ordinance provisions that authorized the conditions. Because the township did not do so, the trial court held that the plan conditions were invalid and consequently the developer was entitled to a deemed approval of the plan under Section 508(3) of the MPC. This Court reversed. We held that the MPC does not require a township to support each condition with a citation to the relevant statute or ordinance. We further explained that where the conditions are not accepted by an applicant, the conditional approval constitutes a rejection. The aggrieved applicant's remedy is to file a land use appeal to challenge the condition.

Likewise, in *Stauffer v. Weisenberg Township Board of Supervisors*, 934 A.2d 783 (Pa. Cmwlth. 2007), the township approved the landowner's plan with conditions to which she objected. Some of the conditions were supported by references to the township ordinance, but others were not. The landowner argued, *inter alia*, that the township's failure to comply with the notice requirements of Section 508(2) of the MPC rendered the conditions void. This Court held that the

---

Although the phrase "not approved in terms as filed" in Section 508(2) could be construed to refer to the imposition of a condition, the rest of that sentence speaks of specification of defects and citation of provisions relied upon in connection with a "decision" on the application. Section 107 of the MPC, 53 P.S. §10107, defines "decision" as the "*final* adjudication of any board or other body granted jurisdiction under any land use ordinance or this act…." (Emphasis added.) The "decision" in Section 508(2), therefore, is the actual denial of the application, rather than the imposition of a condition that might or might not precede a denial, depending on whether the applicant accepts the condition. In our view Section 508(2) does not require citation to a provision relied upon in connection with the imposition of a condition.

*Bonner*, 597 A.2d at 200 (emphasis in original).

landowner's sole remedy was a land use appeal, and that the landowner could not assert the "deemed approval" remedy in Section 508(3) of the MPC. This is because "citations to the SALDO, or lack thereof, are of no moment." *Id*. at 786.

With these principles in mind, we turn to Landowners' argument that the Board of Supervisors' power to impose a condition was "predicated upon codification of the requisite procedure" in Section 503(9) within the Township's SALDO. Landowners Brief at 17. Absent the adoption of a SALDO with the provisions set forth in Section 503(9), Landowners argue that the Board of Supervisors lacked authority to impose a condition upon a plat plan, except where the condition is expressly accepted by an applicant. Here, Landowners did not accept the driveway condition.

The MPC does not require a municipality's ordinance to contain the provisions set forth in Section 503 of the MPC. Rather, Section 503(9) of the MPC states that a municipality "*may* include" in its SALDO the procedures set forth therein. 53 P.S. §10503(9) (providing for automatic rescission of a plan approval where the applicant rejects the condition imposed on the plan). The Township chose not to include an automatic rescission provision in its SALDO.

Section 22-303(1)(H) of the Township's SALDO states, in relevant part, as follows:

> *In acting upon the preliminary plan, the Board shall review the report and/or written comments of the Planning Commission, Township Engineer, planning consultant and County agencies, and comments from public hearings, if any, to determine its conformance to this chapter and all other Township ordinances, codes, regulations, plans and maps*. The Board may modify any subdivision or land development plan requirement upon the recommendations of the Planning Commission, *and may specify conditions, changes or additions thereto, which it deems necessary*. Further, *the Board may make its decision to grant*

9

*approval of a preliminary plan subject to conditions, changes or additions*; in the case where the Planning Commission has concluded that the preliminary plan meets all requirements of a final plan, then upon the recommendation of the Planning Commission the Board of Supervisors may consider the preliminary plan as a final plan and may act thereupon accordingly.

SALDO §22-303(1)(H) (emphasis added). In accordance with this provision, the Board of Supervisors granted Landowners an "approval of a preliminary plan subject to conditions." *Id*. We reject Landowners' argument that because the Township's SALDO did not contain the procedures set forth in Section 503(9) of the MPC, the Board of Supervisors lacked authority to impose a condition on the Plan.

Landowners contend that they were entitled to "an express, written denial" by the Board of Supervisors that specified the defects found in the application; described the requirements not met; and cited to the provisions of the SALDO or the statute relied upon. Landowners Brief at 15. They base this argument on Section 508(2) of the MPC, which requires this specificity when an application is disapproved.

Landowners' argument cannot be reconciled with *Koller* and *Stauffer*. The Board of Supervisors approved Landowners' Plan with the driveway condition that the Landowners did not accept. Landowners' sole remedy was to file a land use appeal, and they did so. We decline to revisit the merits of *Koller* and *Stauffer*.

## II. Driveway Condition

Landowners argue, next, that the driveway condition imposed by the Board of Supervisors was not authorized by the SALDO. The trial court held that the driveway condition was based upon the design standards for driveways set forth in Section 22-506(5) of the SALDO. The driveway standards, however, bear no

relation to Landowners' lot line revision. In any event, Section 22-506(5) is inapplicable because Parcel B is not a "corner lot." SALDO §22-506(5). Landowners further argue that the trial court erred in pointing to the minutes of the meeting on October 5, 2015, because the Plan itself did not reference a driveway "in any respect." Landowners Brief at 22. The Board of Supervisors respond that the Township is authorized to enact design standards for driveways, and "[e]ven a cursory review" of the Plan shows that Parcel B is a "corner lot" subject to restrictions in Section 22-506(5) of the SALDO. Board of Supervisors Brief at 14.

In reviewing conditions, the trial court "may consider whether the conditions are appropriate to effectuate compliance with relevant statutes and ordinances and, if so, whether the objected-to conditions are reasonable in order to make the plan be in compliance." *Koller*, 871 A.2d at 292. The trial court may strike conditions that are not legal. *Id*.

In *Stauffer*, 934 A.2d 783, the landowner submitted a plan to subdivide a 17.6-acre parcel into two lots. The township approved the plan with the conditions that the landowner: (1) reconstruct, widen and pave an entire road even though her property abutted only part of the length of that road and (2) construct driveways for the two subdivided lots prior to their sale. The landowner objected to the conditions. This Court held that neither condition was authorized by the township's SALDO and, thus, reversed the trial court.

The SALDO required a developer to pave a street that abuts a development where "there is a reasonable relationship between the need for an 'on-site improvement' of a street and the traffic created by a proposed subdivision or land development." *Stauffer*, 934 A.2d at 787 (quoting township ordinance). In imposing the road improvement condition, the board of supervisors "made no

11

findings whatsoever about what, if any, increase in traffic will be created by two lots where presently there exists one." *Id.* at 788. Notably, the township engineer's report did not state that the second lot would generate such additional traffic as to require improvement to the adjacent road. Stated otherwise, the record lacked evidence to justify a "reasonable relationship" between the creation of a second lot on the property and the need to pave the entire length of the road. *Id.*

In *Stauffer*, this Court also held that the township lacked authority to require the construction of driveways for the two subdivided lots prior to their sale. We rejected the township's argument that the driveway condition was warranted by the engineer's report, noting that the report related to the grade of an existing driveway and said nothing about ingress and egress. Further, the township's ordinance did not require the construction of a driveway before a lot could be sold. The township was free to "refuse to issue a permit for the construction of a driveway with too steep a grade if, and when, either [the landowner] or her successor-in-interest seeks to build a driveway on one of the two lots." *Id.* at 789.

Here, the Board of Supervisors points to Section 22-506(5) of the SALDO as authority for its driveway condition. It states that "[t]he edge of the driveway shall be located not less than 40 feet from the tangent point of the curb radius of corner lot." SALDO §22-506(5). Neither the trial court nor the Board of Supervisors made any findings whatsoever about a "corner lot" or the "tangent point of the curb radius." In any case, Section 22-506(5) has nothing to do with the relocation of lot lines. The Township engineer's report did not comment on either the existing shared driveway or a "potential driveway" on Parcel B. It commented only on the "net lot area calculation." O.R., Item 3, Exhibit 5. The Board of

12

Supervisors did not explain why the driveway condition was necessary to the lot line relocation or make any factual findings relevant thereto.

Landowners' application described the Plan as "Preliminary/Final Subdivision Plan Lot Line Revision Joos Property." R.R. 5a. The Board of Supervisors' meeting minutes of October 5, 2015, acknowledged that a driveway was not part of the Plan. R.R. 13a. As in *Stauffer*, 934 A.3d 783, the permitting process for driveways is the vehicle for addressing concerns, if any, about a future driveway on Parcel B.[8]

We hold that the Board of Supervisors exceeded its authority under the SALDO in imposing the driveway condition on Landowners' Plan to revise a lot line. The record does not support the driveway condition as "appropriate to effectuate compliance with relevant statutes and ordinances" or "reasonable in order to make the plan be in compliance." *Koller*, 871 A.2d at 292. Accordingly, we reverse the trial court's order that affirmed the Board of Supervisors' conditional grant of the Plan.

### III. Petition for Contempt

Finally, Landowners assert that the trial court abused its discretion in refusing to impose sanctions for the Board of Supervisors' willful and prolonged contempt of the Writ of Certiorari to return the record.[9] Ignoring the writ and the

---

[8] For this reason, we need not address Landowners' argument that the Board of Supervisors' authority to review and permit driveways is preempted by Section 420 of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §670-420.

[9] In its Pennsylvania Rule of Appellate Procedure 1925(a) opinion, the trial court stated that the contempt issue has been waived because Landowners did not file a separate appeal of the trial court's April 30, 2019, order denying the petition for contempt or raise the issue in their motion for reconsideration. The trial court erred. Generally, a trial court's refusal to enter an order holding someone in contempt is interlocutory and not appealable when it is entered, unless "the refusal is tantamount to denying to the party requesting the order relief to which that party has a right under an earlier final order." *Commonwealth v. Guardiani*, 310 A.2d 422, 424 (Pa. Super. 1973). A

13

local rules of civil procedure, the Board of Supervisors sat on the record for more than three years.  Landowners contend that they made efforts to attempt to resolve the matter, but it was not until the contempt petition was filed that the Board of Supervisors returned the record.

Landowners filed the petition for contempt on February 14, 2019.  On the same day, the trial court issued a rule to show cause[10] that required the Board of Supervisors to "file an answer to the petition within twenty (20) days of service upon

---

party needs to file only a single notice of appeal to secure review of prior non-final orders that are made final by the entry of a final order.  *See K.H.  v. J.R.*, 826 A.2d 863, 870-71 (Pa. 2003); PA. R.A.P. 341, Note.  Further, unlike a motion for post-trial relief under Pennsylvania Rule of Civil Procedure No. 227.1, in which any issue not raised is waived for appeal purposes, *see L.B. Foster Co. v. Lane Enterprises, Inc.,* 710 A.2d 55 (Pa. 1998), Landowners' motion for reconsideration was filed under Rule of Appellate Procedure 1701, which provides that "the trial court or other government unit may … (3) Grant reconsideration of the order which is the subject of the appeal or petition[.]" PA. R.A.P. 1701(b)(3).  The filing of a motion for reconsideration was not necessary to preserve all issues for appellate review.  On the other hand, a contempt order that actually imposes sanctions is final and appealable when it is entered.  *Office of Attorney General, Bureau of Consumer Protection v. Lubisky*, 88 A.3d 328, 333 (Pa. Cmwlth. 2014).

[10] Rule No. 206.7 provides the procedure after issuance of rule to show cause as follows:

(a) If an answer is not filed, all averments of fact in the petition may be deemed admitted for the purposes of this subdivision and the court shall enter an appropriate order.

(b) If an answer is filed raising no disputed issues of material fact, the court on request of the petitioner shall decide the petition on the petition and answer.

(c) If an answer is filed raising disputed issues of material fact, the petitioner may take depositions on those issues, or such other discovery as the court allows, within the time set forth in the order of the court. If the petitioner does not do so, the petition shall be decided on petition and answer and all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of this subdivision.

(d) The respondent may take depositions, or such other discovery as the court allows.

PA. R.C.P. No. 206.7.

14

[the Board]" and to complete depositions "within forty-five days (45) of service upon petitioner of the answer to the petition." R.R. 138a.

The Board of Supervisors filed the return of the record on February 15, 2019, and an answer to the petition for contempt on March 6, 2019. In its answer, the Board of Supervisors denied, *inter alia*, that it had "refused to return the record" or "made any representations … that [it] had refused or was refusing to return the record." R.R. 162a-63a. Landowners filed a brief in support of the petition for contempt on April 15, 2019, and the Board of Supervisors filed a brief in opposition to the petition on April 23, 2019. No deposition or other form of discovery took place. The trial court denied the petition for contempt on April 30, 2019.

It is well established that "[c]ourts possess an inherent power to enforce their orders by way of the power of contempt." *Department of Environmental Protection v. Cromwell Township, Huntingdon County*, 32 A.3d 639, 653 (Pa. 2011) (quoting *Brocker v. Brocker*, 241 A.2d 336, 338 (Pa. 1968)). This power includes "broad discretion in fashioning and administering a remedy for civil contempt." *Commonwealth v. Honore*, 150 A.3d 521, 526 (Pa. Cmwlth. 2016) (citing *Milligan v. Piczon*, 739 A.2d 605, 611 (Pa. Cmwlth. 1999)).

The purpose of civil contempt is "to compel performance of lawful orders," and the burden is generally on the complaining party to prove noncompliance with the court order. *Honore*, 150 A.3d at 526. Mere noncompliance with a court order is insufficient to prove civil contempt. *Id*. The complainant must prove: "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Id*. (quoting *Epstein v. Saul Ewing, LLP*, 7 A.3d 303, 318 (Pa. Super. 2010)). Further, an

15

appellate court will reverse a trial court's order denying a contempt petition "only upon a showing that the trial court misapplied the law or exercised its discretion in a manner lacking reason." *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa. Super. 2012).

Here, the Board of Supervisors delayed responding to the Writ of Certiorari for more than three years. In its answer to the petition for contempt, the Board of Supervisors denied that it "refused to return the record" or "made any representations … that [it] had refused or was refusing to return the record." R.R. 162a-63a. In short, the Board of Supervisors' answer raised an issue of material fact as to whether the Board of Supervisors had "acted with wrongful intent." *Honore*, 150 A.3d at 526. Landowners did not conduct discovery on this issue.

In their brief in support of contempt, Landowners attached an email exchange between Landowners' counsel and the Township's solicitor to show wrongful intent. This email exchange concerns the parties' attempt to resolve the driveway condition, but it does not show the requisite *mens rea* with respect to the Board of Supervisors' failure to return the record. As such, the trial court did not abuse its discretion in denying Landowners' petition for contempt.

### Conclusion

For these reasons, we reverse the trial court's July 9, 2019, order affirming the Board of Supervisors' conditional grant of the Plan. The driveway condition bears no relation to the lot line revision Landowners sought in the Plan. We affirm the trial court's April 30, 2019, order denying Landowners' petition for contempt because Landowners did not establish that the Board of Supervisors, by failing to return the record, acted with wrongful intent.

_____
MARY HANNAH LEAVITT, President Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric Joos and Amanda Joos, h/w    :
and Mary Ellen Joos,    :
          Appellants    :
    :
    v.    :   No. 1078 C.D. 2019
    :
Board of Supervisors of Charlestown    :
Township    :

# **O R D E R**

AND NOW, this 31st day of July, 2020, the order of the Court of Common Pleas of Chester County dated July 9, 2019, in the above-captioned matter, is REVERSED. The order of the Court of Common Pleas of Chester County dated April 30, 2019, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge